## ESTHER V. MARSHALL *v.* CELESTON A. MARSHALL.

[No. 97, October Term, 1931.]

*Decided March 2nd, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*W. Le Roy Ortel,* with whom was *T. Bayard Williams* on the brief, for the appellant.

PATTISON, J., delivered the opinion of the Court.

In this case, Esther V. Marshall, the appellant, filed her bill in the Circuit Court of Baltimore City on the 13th day

of December, 1929, against Celeston A. Marshall, the appellee, charging him with adultery, and asking: (1) That she be divorced *a vinculo matrimonii* from him; (2) that she be granted both temporary and permanent alimony; (3) that the defendant be required to pay unto her "the sums of money invested by her in the properties now held in their joint name"; and (4) that a receiver be appointed to sell the aforesaid property and distribute the proceeds thereof under the jurisdiction of the court.

The defendant filed his answer denying the material allegations of the bill. Thereafter evidence was taken, and, at the conclusion thereof, the court, Judge Dawkins, on the 1st day of October, 1930, passed its decree, granting to the plaintiff an absolute divorce, decreeing the sale of the said joint property, and directing that the proceeds thereof be brought in court to be distributed under its jursidiction. It was further decreed that the defendant pay unto plaintiff's counsel the fee of fifty dollars, and also pay the costs of the proceedings, including the stenographic report and copy of the testimony. The decree was silent as to alimony; that is, no provision was made in it for the payment of alimony.

On the 18th day of October, 1930, after the decree had been enrolled, the appellant filed a petition in court alleging: (1) The passage of said decree; (2) that she was in bad health, and not in a condition to earn a livelihood; (3) that, as a result of her physical condition "her loss of time caused her to be relieved of her duties by her employer," and she was "advised by her physician that she must undergo an operation"; (4) that in consequence of the facts alleged, she was without means "for her support and maintenance and for medical care and attention"; (5) that at such time the sale of the property had not been made; (6) that the defendant was then working at the Bethlehem Steel Company at a salary of twenty eight to thirty dollars per week; and (7) that the decree be "modified providing for permanent alimony and finances sufficient for the plaintiff's medical attention from her husband's estate."

On the 1st day of December, 1930, a demurrer was filed to the appellant's petition and, after a hearing thereon, the demurrer, on the 23rd day of December, 1930, was sustained, and the petition dismissed without prejudice by Judge O'Dunne.

An "amended petition" was filed by the appellant on the 28th of February, 1931. This petition included the allegations of the first with the additional allegations: (1) that upon its being shown by the evidence in the case that the plaintiff was making "approximately twenty-one ($21.00) dollars a week, and the defendant twenty-five ($25.00) dollars per week at the time of the hearing," the plaintiff understood Judge Dawkins to say in announcing his conclusions upon the question of alimony "that in view of the income of the plaintiff at that time the divorce would be granted but no alimony allowed, but that in event there was a change in the income of the plaintiff, the plaintiff could at that time move the court for such alimony as she would be then entitled"; (2) that the said error (consisting of the fact that the chancellor in his decree made no reference to alimony) "was not brought to the attention of the plaintiff until hearing upon" her first petition on the 23rd of December, 1930, which, as alleged, was within the term in which the decree was passed, and "that said petition was heard by his Honor, Judge O'Dunne, who not being familiar with the facts of the case, and not sitting at the hearing, decided the question in law pertinent to the petition filed, and sustained a demurrer without prejudice * * * and suggested that counsel for the plaintiff interview Judge Dawkins for a final ruling on the said petition in that the latter chancellor was familiar with the facts." The petition concludes with the prayer "that the decree passed on the 1st day of December, 1930, may be reviewed and amended, and that the said decree, in so far as it is silent on the subject of alimony, be so amended to express the oral view of the chancellor hearing said case, providing for future alimony to the plaintiff, subject to the further order of this honorable court." This petition, it seems, was designated a bill of review.

On the same day, February 28th, a third petition was filed by the appellant. The allegations of this petition are, in great part, a repetition of the allegations of the former petition. In it the plaintiff, among other things, alleged: (1) That she had been to the hospital, had been operated upon, and, as a result, was left in a "weakened condition" unable to "follow her usual duties for a time in the future, thereby stripping her of her earning power and throwing her upon the charity of her friends and relatives"; (2) that the properties jointly held by her and the appellee, decreed to be sold, had been offered for sale, but no bid was received; and (3) that at the time it was unoccupied and yielded no income. The petition concluded with a prayer that the decree "be modified, providing for alimony to the plaintiff by the defendant," and that she be allowed alimony pending the hearing on the petition.

On the 12th day of March, 1931, a demurrer to each of the last-named petitions of February 28th, 1931, was heard by Judge Dawkins, who, on the 8th day of May thereafter, sustained the demurrers and dismissed the petitions. It is from the two orders dismissing these petitions that the case comes to us on appeal.

The question presented by this appeal is: Can alimony be awarded the wife after enrollment of the decree granting her a divorce *a vinculo matrimonii* upon a bill in which alimony was asked for but not allowed her, the decree being silent as to alimony, and reserving no authority or power in the court to consider and pass upon the question of alimony at a time subsequent to the passage of the decree?

This exact question has never been before this court. In *McCaddin v. McCaddin,* 116 Md. 567, 82 A. 554, 557, it was held that where a "divorce *a mensa et thoro* is granted, or when there is an allowance of alimony without divorce, the decree can be modified as circumstances may require, subject, of course, to some well-established rules." This court, in rendering its decision in that case, speaking through Chief Judge Boyd, and quoting from 2 *Am. & Eng. Ency of Law* (2d Ed.) 135, said: "The rule is thus stated: 'The

amount of alimony allowed * * * the wife as permanent alimony, upon a decree of divorce *a mensa et thoro,* may, when the circumstances justify it, be increased or diminished as the case demands. * * * But in the case of a decree *a vinculo* the award is absolute, and cannot be altered after the expiration of the term or the time in which a new trial may be had, unless in the decree the court reserves the right to do so, or unless the power to subsequently modify the decree is given expressly by statute.' See, also, 14 *Cyc.* 784; 1 *Ency. of Pl. & Pr.* 430." The rule of law as stated in 2 *Am. & Eng. Ency. of Law* is supported by numerous authorities: 1 *R. C. L.* 92; *Mayer v. Mayer,* 154 Mich. 386, 117 N. W. 890; *Sampson v. Sampson,* 16 R. I. 456, 16 A. 711; *Ruge v. Ruge,* 97 Wash. 51, 165 P. 1063; *Smith v. Smith,* 45 Ala. 264; *Harlan v. Harlan,* 154 Cal. 341, 98 P. 32; *Wilkins v. Wilkins,* 146 Ga. 382, 91 S. E. 415.

In the later case of *Emerson v. Emerson,* 120 Md. 584, 87 A. 1033, 1035, the court referred to what was said in *Mc-Caddin v. McCaddin, supra,* by Judge Boyd, quoting from 2 *Am. & Eng. Ency. of Law* (2d Ed.) 135, and said: "The question involved in this appeal was not before the court in that case. There was no opinion by the court on this point, but merely a quotation stating what the rule was held to be by that authority." Whether the court, by the statement so made, intended to repudiate the law as enunciated in that authority, is not clearly shown. But, if it was so intended, Judge Boyd, after quoting from the *Am. & Eng Ency. of Law,* said: "It seems to be well settled that, at least when a divorce *a mensa et thoro* is granted, or where there is an allowance of alimony without divorce, the decree can be modified as circumstances may require," without saying whether a decree *a vinculo* could or could not be modified after its enrollment where there was no reservation of power to modify it subsequently.

In the more recent case of *Clarke v. Clarke,* 149 Md. 590, 131 A. 821, 822, the wife had been granted a divorce *a mensa et thoro,* but was refused alimony. Thereafter a petition was filed asking for a modification of the decree. A demurrer

filed thereto was sustained. The case came to this court on appeal, and Judge Adkins, speaking for the court, said: "It is well settled by our decisions that the rules of the ecclesiastical courts of England prevail in Maryland so far as they are consistent with the Code. *Emerson v. Emerson, supra.*" He then said, quoting from the last-cited case, "It is not, nor can it be, disputed that the ecclesiastical courts had power at any time, upon proper cause shown, to modify the provisions of a decree as to alimony. It is also conceded that our courts of equity have power to modify provisions as to alimony in decrees of divorce *a mensa.* The jurisdiction, in decrees of that character, was not exhausted by the rendering of the decree. The authorities are unanimous that the courts retained the continuing jurisdiction over these decrees. * * *" And the decree of the chanceller was reversed, the court holding that where the wife was divorced *a mensa et thoro,* the court had the power or authority to modify the decree refusing alimony, so as to allow her alimony.

It will be seen, from the decisions in the cases from which we have quoted, that a decree after enrollment for alimony alone, or for a divorce *a mensa et thoro* with the allowance of alimony, or for divorce *a mensa et thoro,* where alimony is asked for but refused, may subsequently be modified; that is to say, in those cases where alimony is allowed, it may be increased or diminished; or where it is refused, it may thereafter be modified by the allowance of it.

These cases, however, do not decide the question here presented. The decree in this case is not a decree granting alimony only, or a decree *a mensa et thoro* with an allowance of alimony, or a decree *a mensa et thoro* where the alimony was refused, but it is an absolute decree of divorce, with no allowance of alimony, though asked for, and without any reservation of power to consider and pass upon the question of alimony at some future time.

It now seems to be the settled law of this State that a decree for absolute divorce may be modified to the extent of increasing or reducing the amount therein directed to be paid to the wife as alimony, as circumstances may justify. *Emer-*

*son v. Emerson, supra.* In the case last cited, the court said: "We are of the opinion that the better reasoning leads irresistibly to the conclusion that, in states where alimony is regarded as a maintenance for the wife's support out of the income of the husband (as it is in this State) and not a division of property, the jurisdiction exists in the courts of equity to modify that part of the decree providing for alimony whether the decree grants divorce *a vinculo* or *a mensa.*" But is this rule to be applied in cases of divorce *a vinculo* where there is no provision made for the payment of alimony?

There is, we think, a very material difference in the two classes of cases, a difference which justifies a different conclusion as to the application of the rule. In the first class, the court, in the passage of the decree, has not exhausted its jurisdiction, inasmuch as it retains a continuing jurisdiction as to the enforcement of the payment of alimony so long as it is payable. In the second class of cases, where the decree grants an absolute divorce, with no reservation of power in respect to the allowance of alimony thereafter, not only are the marriage ties completely severed, but the man is relieved of the obligation of a husband to support his wife. In that case, the jurisdiction of the court is fully exhausted, there being nothing further for the court to do in the exercise of its jurisdiction in relation to the subject matter of the decree; while in the former class of cases, the marriage ties are not completely severed, the parties remain man and wife, and the obligation is still upon the husband to support his wife. In one class of cases there is a continuing jurisdiction, while in the other there is not.

In our opinion the rule above stated does not apply to this case, where the decree granted an absolute divorce without allowing alimony, and without reserving therein any power in the court to pass thereafter upon the subject of alimony. In this conclusion there is nothing inconsistent with the views expressed by the court in *Clarke v. Clarke, supra,* for in that case, under the decree therein passed, the parties were still man and wife after the passage of the decree, and it

was still within the jurisdiction of the court to deal with the subject of alimony, in lieu of the support and maintenance of the wife by her husband.

There is no case in this state that we have found, or to which we have been referred, that has passed upon the question whether a decree *a vinculo,* dissolving the marriage and terminating the husband's duty to support his wife, and awarding to her no alimony, as in the case before us, can after enrollment be modified so as to allow her alimony. But there are numerous cases in other jurisdictions: *Spain v. Spain,* 177 Iowa, 249, 158 N. W. 529, 530; *Kamp v. Kamp,* 59 N. Y. 212; *Kerr v. Kerr,* 59 How. Pr. (N. Y.) 255; *Stratton v. Stratton,* 73 Me. 481; *Sammis v. Medbury,* 14 R. I. 214; *Sampson v. Sampson, supra; Mitchell v. Mitchell,* 20 Kan. 665; *Mildeberger v. Mildeberger,* 12 Daly (N. Y.) 195; 19 *Corpus Juris,* 247; *Jordan v. Jordan,* 53 Mich. 550, 19 N. W. 180.

In *Spain v. Spain, supra,* in which an effort was made to modify a decree *a vinculo* when no provision had been made for alimony, as in this case, the court said: "At common law and under ecclesiastical procedure courts did entertain such an action as this, but this was because there was no such thing as an absolute divorce known to either law. The divorce was from bed and board, and was little more than a legalized separation. The duty of the divorced husband to support his wife continued after the divorce was granted, and these courts recognized the right to enforce this obligation by changing the original decree or order to meet new conditions, so that, if the divorced husband thereafter acquired property in any manner, even through inheritance, the court opened up the matter of alimony and modified its original order to meet the new conditions. In such proceedings both the needs of the former wife and the ability of the former husband were considered on application to modify the decree. *O'Hagan v. O'Hagan,* 4 Iowa, 509; *DeBlaquire v. DeBlaquire,* 3 Hagg. Ecc. 322; *Lockridge v. Lockridge,* 2 B. Mon. (Ky.) 258; *Rees v. Rees,* 3 Phillim. 387; *Poynter, Marriage & Divorce* (1836) *236. In this country * * *

a divorce absolutely dissolves the marriage status, and the duty of support no longer exists. Alimony is allowed in such cases in lieu of * * * refusing, denying, or failure to award it, save for such fraud or mistake as would authorize the setting aside or modification of any decree."

In the present case there is no allegation of fraud or of such mistake as would authorize the modification of the decree. The application for modification of the decree was made some two months after the passage of the decree and after its enrollment. If an absolute decree of divorce, where alimony is refused, or not allowed, may be opened and modified two months after its passage, there is nothing to prevent it from being opened and modified two years or more after its passage, and after the husband has resumed other obligations, rightfully believing from the final character of the decree that he was free from all further obligations to support one who had ceased to be his wife.

The court in our opinion committed no error in sustaining the demurrers and dismissing the petitions. The orders appealed from will be affirmed, with costs to the appellant.

*Orders affirmed, appellant to pay the costs.*