## WALTER C. TOME *v.* OLGA F. TOME

[Nos. 29 and 30, October Term, 1941.]

*Decided November 7, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE and MARBURY, JJ.

*Ellis Levin,* for the appellant.

*Thomas E. Mason,* for the appellee.

MARBURY, J., delivered the opinion of the Court.

This record contains two appeals from the Circuit Court of Baltimore City. The first is from an order fixing the amount of permanent alimony to be paid by the appellant to the appellee. The second is from an order requiring the appellant to pay the appellee a counsel fee for her solicitor's professional services on appeal in this cause, and further requiring the appellant to set aside a sum to pay the cost of printing the appellee's brief herein.

The original bill of complaint for a divorce *a vinculo matrimonii* was filed by the appellee on July 21, 1931. On August 31, 1931, after the appellant had filed an answer and testimony had been taken, a decree was signed divorcing the appellee from the appellant. In this decree the appellant was ordered to pay the appellee the sum of $25 per week as permanent alimony, subject to the further order of the court. In 1936 the appellant petitioned for a modification of the alimony. On February 5 of that year, the decree was modified by an order directing the appellant to pay the appellee the sum of $18 per week, of which $15 was permanent alimony and the remaining $3 was on account of arrears of $1,550. It was further provided that when one-half of these arrears, or $775, should be paid, this should constitute full payment.

On February 1, 1941, the appellee petitioned the court, stating that the appellant had fully paid the $775 in settlement of the arrears as provided for in the last order, but that his circumstances had improved; that he was married the second time; that he owned his home in Baltimore City, a waterfront place on Middle River, and an automobile; and went to Florida every winter. That the appellee had a cataract removed from one of her eyes and would shortly be obliged to have the same thing done to the other eye; and that she was without funds and could not obtain employment. This petition was answered by the appellant, testimony was taken, and an order was passed on April 5, 1941, rescinding the reducing order passed on February 5, 1936, and again ordering the appellant to pay the sum of $25 per week as permanent alimony, as provided in the original decree.

The testimony shows that the appellee has never been employed; that she does the housework for her mother and herself; that she was married to the appellant for nineteen and one-half years, and kept house for him; that her mother is an invalid and her mother bought the house in which she lives, and put her name on it; and that she pays half the taxes and half the electric and gas bills, and that she is about to have an operation. It further shows that the appellant voluntarily reduced the alimony to $15 a week in 1933, which was three years before the court modified it, and that it was the difference between the $15 and the $25 for these three years that created the deficit, which the appellant was ordered to pay in 1936. At the time the order of 1936 was passed, the court found that the salary of the appellant from the City of Baltimore was the yearly sum of $2,673.60. The appellant testified that he is employed in the Lamps and Lighting Division, and that his gross salary is now $3,160, from which there is a deduction for the employee's pension fund, which leaves his net salary at $3,005; that he owns property in Baltimore, which he considers worth about $8,000, subject to a $6,000 mortgage; that he owns

a place in Middle River, which cost $1,700, upon which there is a $1,700 mortgage; that he has given up the electrical business because he had been losing money in it; and that he had only made money in that private business up to 1933; that his present wife is employed and makes $25 a week; that his present wife has an automobile, but he has none. Exhibits filed in the case show that the appellant's gross earnings for 1930 were $3,000, for 1936 were $2,820, and for 1940 were $3,160. It further appears from the testimony that when the divorce was granted the $25 a week was agreed upon between the appellant and the appellee.

The order of the lower court seems to be amply justified by the testimony. It was passed by the court after opportunity had been given to both parties to have testimony taken. The facts as to the appellee's need and the appellant's income are undisputed. The court below exercised his discretion in fixing the amount, and his order, seems to us to be reasonable under the circumstances.

· The question raised in the second appeal presents more difficulty. The precise point is whether the court has authority to require an ex-husband to pay his former wife for the services of her counsel in a successful attempt to have her permanent alimony restored to the figure at which it had been fixed by the original decree, the reduction having been previously made by order of court.

Counsel fees are allowed to a wife in divorce cases because of the obligation of the husband to supply his wife with the necessaries of life. The courts have always felt that where she is deprived of her rights, and has no sufficient funds to employ counsel, she is entitled to have her counsel paid by her husband, in order that her rights may be adequately presented to the court. The theory upon which this is done is the obligation of the husband to support his wife.

A different situation arises after the divorce has been granted. Then the parties are no longer husband and wife, and while permanent alimony may be, and fre-

quently is, awarded and counsel fees are allowed for the wife up to the time of the divorce, there is no instance in this State in which they have been allowed to an ex-wife to whom her husband owes nothing except the payment of the alimony awarded.

It is earnestly contended on behalf of the appellee that the power to order the payment of permanent alimony includes the power to provide the means for the recipient to preserve that provision of the decree, and that the right to a counsel fee to defend or to increase in a proper case, the amount of alimony ordered, goes hand in hand with the right to have the alimony retained or increased, and is a necessary concomitant of that right.

The authorities elsewhere seem to be divided. In 17 *Am. Jur.*, p. 455, paragraph 576, it is said: "The cases are not entirely agreed as to the power of courts to allow counsel fees to a former wife upon application to modify a divorce decree in respect of alimony. Some of the cases hold that the court may allow a former wife counsel fees on an application by her for increased alimony. Others take the position that after a divorce and an award of permanent alimony, the woman, being no longer the wife of the other party, is not entitled to an allowance for services rendered by her counsel in an unsuccessful effort to have the amount of alimony increased."

27 *Corpus Juris Secundum, Divorce,* p. 914, Sec. 219, says: "It has also been held that an allowance of counsel fees may be made in favor of a divorced wife to enable her to meet her divorced husband's motion to revoke an order awarding alimony. However, in some jurisdictions, it has been held that the court has no power to award counsel fees to a wife in a proceeding to amend an award of alimony after a final judgment of absolute divorce, although it may do so after final judgment in an action for separation." The cases from other jurisdictions on the subject have been examined, but they are not of much value to us, because they are, in practically all instances, based upon statutes in the respective States,

and each decision depends upon the construction of a particular statute.

The question is no longer an open one in this State, where the application for an increase is unsuccessful. In the case of *Winchester v. Winchester*, 138 Md. 95, 113 A. 584, 585, 14 *A. L. R.* 609, this court after stating that the right of a wife to alimony and to an allowance for services rendered by her counsel in the prosecution or defense of her suit on appeal could no longer be questioned in this State, and that it rested upon the existence of the marital relation, the necessity for such an allowance and the obligation of the husband to provide necessaries for a wife said: "As the appellee, at the time the services in question were rendered, was not the wife of the appellant, and he was no longer liable for her support and for necessaries furnished her, except to the extent and by virtue of the alimony awarded her by the decree of 1913, there would seem to be no ground for an allowance for such services against the husband."

In the Winchester case the former wife had filed a petition for an increase in alimony and the former husband had filed a cross-petition for a reduction. Both were dismissed, but the court below allowed the former wife a counsel fee, and this was the sole basis of the appeal. The order granting the allowance, as we have indicated, was reversed by this Court. This case is usually cited as one in which there was an unsuccessful attempt by a former wife to secure an increase in alimony, but it will be seen that it also represents a successful attempt by a former wife to prevent the reduction of alimony, and to that extent is authority for the question before us.

In the case of *Carter v. Carter,* 156 Md. 500, 114 A. 490, 493, the question, as stated by Judge Parke, speaking for this Court was the propriety of allowing to a former wife a counsel fee for legal services rendered in connection with the determination of the future custody of a minor child, after a decree of divorce a vinculo matri-

monii had ended the marital relation between the parents of the infant, and had awarded the custody of their child. The former wife's contention in that case was not sustained, and this Court in discussing the question before it said: "The power of a court of chancery to require the husband to pay the wife alimony and counsel fees rests fundamentally upon the existence of the marital relation. So, it has been held that when the marriage is dissolved by divorce, the former husband is not liable for the unsuccessful professional services of an attorney who was employed by the divorced wife to secure an increase in the amount of her alimony."

A further discussion showed the difference between the question in that case and the one considered in the Winchester case, because while the relation of husband and wife had ended, the relation between parent and child still existed, and the fee in that case had to do with the latter relation and not the former. In that discussion, however, it was again stated that there could be no implied obligation of the father to the mother arising out of their former marriage state, since the absolute divorce ended the ability to bind the husband for necessaries.

In the case of *Tabeling v. Tabeling*, 157 Md. 429, 146 A. 389, 392, the husband was granted a divorce; subsequently the wife filed a petition to reopen the case on the ground of fraud, and after hearing, the decree was vacated. On appeal from the order vacating the decree, which also allowed the wife counsel fees, this Court reversed the action of the lower court in vacating its decree. On the question of the counsel fee, the Court speaking through Judge Sloan, said: "When the petition of May 28, 1928, was filed the appellee was not the wife of the appellant, and as alimony pendente lite and counsel fees are allowable only to a wife, because of the relationship of husband and wife, one who is not a wife is not entitled to such allowances."

It seems to us that the reasoning for the rule laid down in the Winchester, Carter and Tabeling cases applies to the case before us. The right to require the payment of a counsel fee cannot depend on whether or not the applicant is successful in her contention. It is based solely on the existence of the marital relation or, as in the Carter case, on the existence of the parental relation. When the marriage relation ceases, the right to require the former husband to pay his former wife's expenses has gone. His obligations to his former wife are satisfied when he has paid the permanent alimony and payment of such counsel fees as may be allowed for services up to such final decree, or on appeal therefrom. Thereafter the former husband and wife are strangers financially, as well as domestically. There exists no obligation upon the husband, and there can be no right upon the part of the court to compel him to pay. The order of the lower court, allowing the appellee a counsel fee in this case, must be reversed.

*Order affirmed in No. 29. Order reversed in No. 30. Costs in both cases to be paid by the appellant.*