## JOHNSON *v.* JOHNSON

[No. 100, October Term, 1951.]

330

*Decided February 13, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Wilfred T. McQuaid* for the appellant.

*Karl F. Steinmann*, with whom were *Mannes F. Greenberg* and *I. Sewell Lamdin* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a decree, dated July 30, 1951, that a decree dated November 15, 1948 "be modified to increase the maintenance provision", and that defendant pay plaintiff $2,058.70, "the costs and expenses incurred and estimated costs to be deposited with the Clerk of the Supreme Court of the United States, in order to perfect * * * plaintiff's petition [for] *certiorari*" to review a decision of the Supreme Court of Florida, dated January 12, 1951, affirming a decree, dated January 18, 1950, which granted a divorce to defendant from plaintiff on the ground of cruelty.

In August, 1948 plaintiff filed in the lower court a bill against defendant for a divorce *a mensa* on the ground of desertion; defendant appeared and was represented by counsel; the case was heard in open court; a decree dated November 15, 1948 granted plaintiff a divorce *a mensa* on the ground of desertion, allowed her alimony of $100 per week and custody of her child and $25 per week for his support. Before defendant appeared, after two returns *non est*, plaintiff obtained appointment of a receiver to seize defendant' property, the receiver seized property of defendant, defendant appeared and, among other things, claimed to be a resident and citizen of Maryland. The court enjoined defendant from disposing of certain property, but in December, 1950 disposition

of the property, payment of the proceeds into court, and withdrawal thereof upon deposit of certain shares of stock, to the value of $28,000, now held by the clerk, were approved by the court. See Code and 1947 Supp., Art. 16, secs. 16, 38, 141. Neither the decree of November 15, 1948, nor the prior pleadings, proceedings or evidence are before us. Plaintiff alleges that defendant asserted the improper conduct of plaintiff and the court by its decree determined that defendant was at fault and plaintiff free from fault. Defendant denies that he asserted the improper conduct of plaintiff as a defense to her suit.

On March 28, 1949 defendant filed in Florida a bill for a divorce *a vinculo* on the ground of cruelty. Plaintiff alleges "that the facts on which the claim of cruelty was based are identical with the defense asserted by [defendant] in defense of the Maryland * * * case, which defense was decided * * * adverse [*sic*] to [defendant]"; that nothing alleged in the Florida bill or proved in the Florida proceedings "occurred subsequent to the Maryland decree of November 15, 1948"; that the Maryland decree has already determined the matters and issues therein involved in favor of plaintiff, the matter was *res judicata,* and, hence, the Maryland decree was entitled to full faith and credit by the Florida court and that plaintiff there defended on those grounds. Plaintiff does not allege that defendant was not a resident of Florida or that she denied jurisdiction of the Florida court on that ground.

By a decree dated January 18, 1950 the Circuit Court for Dade County, Florida, granted defendant a divorce *a vinculo* on the ground of cruelty. The decree provided, *inter alia,* "(6) That nothing in this decree shall be held or construed to relieve the plaintiff in any manner from complying with the support and maintenance provisions of that certain decree rendered by the Circuit Court No. 2 of Baltimore City, State of Maryland, on the 15th day of November, 1948, in the case of *Mary B. Johnson,* Plaintiff, *v. James Nelson Johnson,* et als., Defendants,

exemplified copy of which decree has been introduced herein as a part of Plaintiff's Exhibit No. 3." Plaintiff appealed from this decree to the Supreme Court of Florida on the ground that the matter was *res judicata* in that the Maryland court had previously made a determination of the identical issues and facts in favor of plaintiff. On January 12, 1951 the decree was affirmed, without opinion, by the Supreme Court of Florida.

Defendant says he was required [by the Maryland court] to pay to plaintiff's counsel a fee of $1,000 and [by the Florida court] an additional $2,500 for counsel fees for her counsel in the Florida case plus an allowance to her for expenses of approximately $1,300. Defendant denies that the facts on which his claim of cruelty is based are identical with the defense asserted by him in the Maryland case, admits that nothing alleged or proved in the Florida case occurred after November 15, 1948, but denies that the Maryland court had already determined the matters and facts involved in the Florida divorce or that the matter was *res judicata*, or that plaintiff defended solely on those grounds and avers that she defended the case fully on the merits.

Plaintiff has filed in the Supreme Court of the United States a petition for *certiorari* to review the decree of the Supreme Court of Florida on the ground that a constitutional question is presented by denial of full faith and credit to the Maryland decree. At the argument it was stated that the Supreme Court has extended the time for filing the record on the application for *certiorari* (perhaps because of this appeal to this court) but that the operation of the Florida divorce decree has not been stayed, by the Supreme Court of Florida or by the Supreme Court of the United States, pending the application for *certiorari*.

On May 14, 1951 plaintiff filed in the lower court, in the 1948 case, an "amended petition for support and maintenance", in which she alleged the matters above stated, and that she is without adequate funds to pay the costs of printing and other charges required by the

rules of the Supreme Court in connection with her application for *certiorari*, defendant has ample funds and the financial ability to pay these costs, the court, in its decree of November 15, 1948, has jurisdiction over the subject matter, and the Florida decree of January 18, 1950 recognizes the court's continuing jurisdiction, and prayed that the order [decree] dated November 15, 1948 be amended to increase the maintenance provision to include all costs required to be deposited in the Supreme Court and other costs which have been advanced to perfect her petition for *certiorari*. After a hearing on the facts, as to the financial condition of the parties, the decree dated July 30, 1951 was filed. From this decree defendant has appealed.

Although the litigation between these parties centers around questions of "divisible divorce" jurisdiction and recent Supreme Court decisions under the full faith and credit clause, the questions now before us do not depend solely or primarily upon the full faith and credit clause. That clause made the defense of *res judicata* a constitutional question when it is based on a judgment of a state court of another state. *Magonlia Petroleum Co. v. Hunt*, 320 U. S. 430, 438, 64 S. Ct. 208, 88 L. Ed. 149. Before the Constitution the courts of the several colonies or states were deemed foreign to each other, and judgments of such courts were in other colonies or states sometimes accepted only as *prima facie* evidence of what they purported to decide. On the other hand, not until 1895 was it established, by a five-to-four decision of the Supreme Court, that a French or Canadian judgment is in a federal court entitled to less than full faith and credit as *res judicata* and is only *prima facie* evidence of what it purports to decide. *Hilton v. Guyot*, 159 U. S. 113, 180-181, 16 S. Ct. 139, 40 L. Ed. 95; *Ritchie v. McMullen*, 159 U. S. 235, 16 S. Ct. 171, 40 L. Ed. 133. Under the Constitution, as independent of it, the jurisdiction of the court over the person and the subject matter is always open to examination.

Plaintiff's basic purpose, in her application for *certiorari*, is to obtain a reversal of the Florida divorce decree as involving a denial of full faith and credit to the Maryland decree. This is the proper way to raise this question, *i.e.*, by direct appeal from the Florida Supreme Court to the Supreme Court of the United States. *Thompson v. Thompson*, 226 U. S. 551, 33 S. Ct. 129, 57 L. Ed. 347; *Davis v. Davis*, 305 U. S. 32, 40, 59 S. Ct. 3, 83 L. Ed. 26. Though pursuing the proper remedy, plaintiff also suggests that the Maryland courts might ignore the Florida decree because it denied full faith and credit to the earlier Maryland decree. This suggestion is groundless. As the New York Court of Appeals said in *Lynn v. Lynn*, 302 N. Y. 193, 97 N. E. 2d 748, 751, "Nevada's asserted denial of full faith does not justify or permit retaliation by any other state. As the decisions make plain, plaintiff's only remedy to correct the alleged error was by direct appeal from the Nevada judgment through the Nevada courts, and, if necessary, to the Supreme Court of the United States. See *Morris v. Jones*. 329 U. S. 545, 552, 67 S. Ct. 451, 91 L. Ed. 488; *Treinies v. Sunshine Mining Co.*, 308 U. S. 66, 77, 60 S. Ct. 44, 84 L. Ed. 85; *Roche v. McDonald*, 275 U. S. 449, 455, 48 S. Ct. [142], 143, 72 L. Ed. 365; *Fauntleroy v. ᴸum*, 210 U. S. 230, 237, 28 S. Ct. 641, 52 L. Ed. 1039; see also *Estin v. Estin, supra*, 296 N. Y. 308, 312, 73 N. E. 2d 113, 114, affirmed 334 U. S. 541, 68 S. Ct. 1213, [92 L. Ed. 1561]; *Restatement, Judgments*, § 42, Comment a, p. 165." This concise statement is fully supported by the Supreme Court cases cited.

To determine whether the Florida courts denied full faith and credit to the Maryland decree, it is necessary to determine, by comparison of the records in the two cases, whether the questions at issue were the same. As these records are not before us, we are not only without authority to determine this question, but also without means of doing so. As we have noted, the question usually raised in tourist divorce cases, as to the domicile of the plaintiff, apparently was not raised in this Florida

case. It would be futile to raise it now, plaintiff having appeared in the Florida case. *Epstein v. Epstein,* 193 Md. 164, 171, 66 A. 2d 381; *Johnson v. Muelberger,* 340 U. S. 581, 71 S. Ct. 474, 95 L. Ed. 552. Indeed, before November 15, 1948 plaintiff must have decided that defendant had ceased to be a resident of Maryland; otherwise we are at a loss to surmise by what authority the Maryland court seized, and for more than three years has held, property of defendant as security for his performance of the decree as to maintenance.

At the argument both the construction and the validity and effect of paragraph (6) of the Florida decree were much discussed. The right and duty to examine the jurisdiction of the court on a question of *res judicata* exists with respect to all or any part of a decree in question. An invalid provision in an otherwise valid decree neither invalidates the valid part of the decree nor is itself validated by being included in an otherwise valid decree. If a Florida decree should provide (1) that H be divorced *a vinculo* from W because of cruelty, and (2) that W be imprisioned in the Baltimore jail for thirty days, the second provision would neither invalidate the first nor be validated by the first. Likewise the same provision may be valid as to part of the subject matter or in some circumstances but invalid as to other parts of the subject matter or in other circumstances. If the Maryland court actually possesses any of the jurisdiction which seems to be reserved to it in the Florida decree, obviously neither the Florida decree nor the full faith and credit clause prevents the Maryland court from exercising such jurisdiction. If, however, under Maryland law the Maryland court has no authority to act as permitted under the Florida decree, then obviously the Florida court has no power to confer jurisdiction upon the Maryland court, and the Maryland court has no right or duty, under the full faith and credit clause or otherwise, to exercise such jurisdiction.

The construction of the Florida decree is by no means clear. We are not persuaded that plaintiff is right in

her contention that "the support and maintenance provisions" of the Maryland decree include a "provision" (non-existent unless by implication from Maryland law) that the specific "maintenance provisions" in the Maryland decree are subject to change from time to time by the Maryland court by increase or decrease of the amounts allowed. However, it is preferable, if possible, that the Florida court, and not this court, construe its decree. For the purposes of this case we may assume that plaintiff's construction of the decree is correct. On this assumption we now face the question whether, under Maryland law, the Maryland court is authorized to exercise jurisdiction, by changing or by enforcing, with or without change, the allowances in the decree of November 15, 1948.

The answer is, no. The authorities are in conflict in different jurisdictions. *Staub v. Staub,* 170 Md. 202, 204-212, 183 A. 605. In Maryland the court has no authority to make, change or enforce provision for payment by a former husband to his former wife of alimony (except power reserved, expressly or by implication, to modify provision for alimony in a decree for divorce *a vinculo*) or "suit money". *Tabeling v. Tabeling,* 157 Md. 429, 146 A. 389; *Staub v. Staub, supra; Tome v. Tome,* 180 Md. 31, 22 A. 2d 549. It is immaterial whether the marriage relation was terminated by death, *McCurley v. McCurley,* 60 Md. 185, by a Maryland divorce, *Tabeling v. Tabeling, Tome v. Tome,* or by a divorce in another state, *Staub v. Staub.* It is likewise immaterial to distinguish on the facts the instant case from the cases just cited or from any cases which have arisen under the full faith and credit clause. The question is not a constitutional question, but a question of Maryland law. If Maryland is to enter into competition with other states to occupy as much "divisible divorce" jurisdiction as possible under *Estin v. Estin,* 334 U. S. 541, 68 S. Ct. 1213, 92 L. Ed. 1561, the Maryland legislature must first change the Maryland law, so that power to make and change maintenance and expense allowances

shall survive divorce. If Justices Frankfurter and Jackson are right, this change must be made with respect to Maryland divorces as well as divorces granted in other states. *Estin v. Estin, supra,* 334 U. S. 550, 554, 68 S. Ct. 1213.

As we have said, the authorities in different jurisdictions are in conflict as to whether power to award alimony or suit money may survive the dissolution of the marriage relation. As to whether a husband or former husband may be required to pay his wife or former wife suit money for expense of litigation in another state, there is no conflict of authority. No case has been cited, and we have found none, in any jurisdiction, in which it was held that a court may grant suit money for expense of litigation in another state. Power to grant temporary alimony or suit money is ordinarily incidental to divorce jurisdiction. *Story, Equity Jurisprudence,* (14th Ed.), § 1856; *McGee v. McGee,* 1851, 10 Ga. 477. Power to grant suit money is also limited to the meaning of the words, *i. e.,* to expense of prosecuting or defending the suit in which it is granted. "It is well settled that the death of either party to a divorce suit before decree, it being a personal action, abates the divorce proceedings; and this effect must extend to whatever is identified with those proceedings. The allowance of money to pay the wife's counsel fees is in furtherance of the procedure to obtain or prevent the divorce. When, therefore, the jurisdiction to pass a decree is ended, no jurisdiction can survive as to matters purely ancillary to that object." *McCurley v. McCurley, supra,* 60 Md. 189. The limited scope of the jurisdiction to grant suit money is illustrated by the fact that this court, after reversing an order in the divorce case last cited for counsel fees as against the deceased husband's estate, sustained the right of the wife's counsel to maintain an action at law for the same fees, as necessaries, against the husband's estate. *McCurley v. Stockbridge,* 62 Md. 422. In *Bennett v. Southard,* 1868, 35 Cal. 688 it was held that an order for alimony *pendente lite,* including suit money, can only

be made by the court where the divorce suit is pending, because they are branches of the same action.

A court of equity, in the exercise of jurisdiction in personam, *e. g.*, in specific performance or injunction cases, may order or forbid acts to be done in other states. It may authorize trustees or guardians, at the expense of their own trust estates, to employ counsel and incur other expense in litigation outside the state. But only the Florida courts (including the Supreme Court of the United States in Florida cases) have direct jurisdiction *inter partes* over costs and expense allowances in Florida litigation. That the courts of another state should assert a dual jurisdiction would be intolerable. In injunction cases by a spouse to restrain the other spouse from prosecuting a divorce suit in another state *Epstein v. Epstein, supra,* 193 Md. 172-173, 66 A. 2d 381, we have found no instance in which the court has even been asked to allow suit money against the husband either in the injunction case or in the foreign divorce case. The jurisdiction of the Maryland courts to conduct a legal aid bureau, for the benefit of wives or former wives at the expense of their husbands or former husbands, to maintain litigation in other states, is nil. This is Maryland law. Whether, if Maryland law were different, the same result would be required under the full faith and credit clause or under the due process clause *Fidelity & Deposit Co. v. Tafoya,* 270 U. S. 426, 46 S. Ct. 331, 70 L. Ed. 664, are questions we need not consider.

*Decree reversed, with costs.*