JOHNSON *v.* JOHNSON

[No. 167, October Term, 1952.]

*Decided June 12, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Wilfred T. McQuaid* for the appellant.

*Paul R. Kach*, with whom was *Karl F. Steinmann* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of December 23, 1952 dismissing a petition filed by the appellant to obtain a release of his stock in Johnson Motor Lines, Inc. held by the Clerk of Court, under court order, to secure payment of alimony of $100 a week to his former wife and $25 a week to support his infant son. The alimony and support were awarded in a decree of the Circuit Court No. 2 of Baltimore City granting her a divorce *a mensa* on the ground of desertion on November 15, 1948. By this decree Johnson, nonresident, was also enjoined, subject to further order of court, from disposing of his

partnership interest in a local enterprise. At that time the partnership was in process of dissolution and on December 15, 1950 Johnson's interest, amounting to about $51,000, was ordered paid into court to secure the payments of the alimony and support. Under a stipulation of the parties, the court on January 5, 1951 passed a consent decree, subject to further order of court, releasing this sum to Johnson upon condition that he assign and deliver to the clerk of court certain stock in Johnson Motor Lines, Inc., owned by him, having a par value of $28,000. The present book value of this stock is about $225,000.

Meanwhile, on January 18, 1950, Johnson obtained a decree of divorce *a vinculo* from his wife on the ground of cruelty by a decree of the Circuit Court for Dade County, Florida. Mrs. Johnson did not ask for alimony, but on February 21, 1950 the court passed a supplemental decree declaring that "nothing in this decree shall be held or construed to relieve the plaintiff in any manner from complying with the support and maintenance provisions of that certain decree rendered by the Circuit Court No. 2 of Baltimore City, State of Maryland, on the 15th day of November, 1948 * * *". On November 17, 1950, Johnson petitioned the Maryland court to have its decree amended to eliminate the alimony award, in view of the Florida divorce, but his petition was dismissed voluntarily at or about the time of the passage of the consent decree of January 5, 1951.

On May 14, 1951 Mrs. Johnson filed in the lower court an "amended petition for support and maintenance" reciting that the decree of the Circuit Court for Dade County, dated January 18, 1950 had been appealed by her to the Supreme Court of Florida on the ground that the issues had been decided in the previous Maryland proceeding and were *res judicata*. That court affirmed without opinion. She asked the Maryland court to increase its maintenance award to provide funds to perfect a petition for *certiorari* to the Supreme Court of the United States from the Florida decree. (It may be

noted that *certiorari* was subsequently denied by the Supreme Court. *Johnson v. Johnson,* 342 U. S. 941, 72 S. Ct. 550, 90 L. Ed. 700).

On July 30, 1951, the Circuit Court No. 2 of Baltimore City passed a decree that its decree of November 15, 1948 "be modified to increase the maintenance provision" and that Johnson pay $2,058.70 "the costs and expenses incurred and estimated costs to be deposited with the Clerk of the Supreme Court of the United States, in order to perfect * * * plaintiff's petition [for] *certiorari.*" On appeal to this court the decree was reversed. *Johnson v. Johnson,* 199 Md. 329, 86 A. 2d 520.

It was pointed out in the opinion cited that the husband's domicile in Florida was never questioned and the wife appeared and actively contested the case. The question of "divisible divorce", discussed in *Estin v. Estin,* 334 U. S. 541, 68 S. Ct. 1213, 92 L. Ed. 1561, and foreshadowed in *Esenwein v. Commonwealth,* 325 U. S. 279, 65 S. Ct. 1118, 89 L. Ed. 1608, is not presented. In *Lynn v. Lynn,* 302 N. Y. 193, 97 N. E. 2d 748, it was held by the New York Court of Appeals that a divorce decree in Nevada, following a personal appearance, even where the court failed to grant alimony or the wife to seek it, nullified the alimony provisions of a prior judgment of separation obtained by her in New York. It was recognized that the question was one of New York law. In *Rodda v. Rodda,* 185 Or. 140, 200 P. 2d 616, 202 P. 2d 638, it was held that even without a personal appearance an absolute divorce obtained by publication had the same effect under Oregon law, although under the *Estin* case Oregon was not required to give it that effect by the full faith and credit clause of the federal constitution.

In the former appeal we discussed this question and also the validity and effect of the supplemental decree of the Florida court, and said: "If the Maryland court actually possesses any of the jurisdiction which seems to be reserved to it in the Florida decree, obviously neither the Florida decree nor the full faith and credit clause

prevents the Maryland court from exercising such jurisdiction. If, however, under Maryland law the Maryland court has no authority to act as permitted under the Florida decree, then obviously the Florida court has no power to confer jurisdiction upon the Maryland court, and the Maryland court has no right or duty, under the full faith and credit clause or otherwise, to exercise such jurisdiction." 199 Md. 329, 337. Assuming that the Florida decree was broad enough to comprehend modifications of the maintenance provisions in the Maryland decree, we held that "In Maryland the court has no authority to make, change or enforce provision for payment by a former husband to his former wife of alimony (except power reserved, expressly or by implication, to modify provision for alimony in a decree for divorce *a vinculo*) or 'suit money'. *Tabeling v. Tabeling,* 157 Md. 429, 146 A. 389; *Staub v. Staub,* [170 Md. 202]; *Tome v. Tome,* 180 Md. 31, 22 A. 2d 549. It is immaterial whether the marriage relation was terminated by death, * * * by a Maryland divorce, * * * or by a divorce in another state, * * *." 199 Md. 329, 338.

Although the case might, perhaps, have been decided on a narrower ground, our decision was rested squarely on the proposition that the alimony provision could not, under Maryland law, survive the dissolution of the marriage by the Florida court. The dissolution was not conditional upon the validity or effectiveness of the supplemental decree. That decree was obviously based on the erroneous assumption that the obligation to pay alimony in Maryland would survive a dissolution of the marriage in Florida. Under the laws of some states the obligation would survive, but we have held otherwise. *Johnson v. Johnson, supra; Staub v. Staub, supra.* On that question the Maryland law must control, despite the declaration of the Florida court disavowing any intention to relieve the plaintiff from his obligations under the Maryland decree. It may be noted that the supplemental decree did not purport to impose an obligation to pay alimony in Florida, where it was not asked for.

It may well be that the Florida court had, and may still have, authority to award alimony in its own right. Cf. *Roseman v. Roseman*, 155 Fla. 750, 21 S. 2d 215. We leave open the question whether, if alimony were awarded in Florida the decree would be enforceable here. Cf. *Rosenberg v. Rosenberg*, 152 Md. 49, 135 A. 840.

Nor do we find any merit in the appellee's contention that jurisdiction could only be challenged by petition to modify the original Maryland decree, and not by petition to modify the order as to security. The petition alleged a lack of jurisdiction to enforce the award. It is generally held that a final decree, without more, terminates an award, although it has been also held that installments accruing down to the time of the filing of a petition are collectable. See note 1 A. L. R. 2d 1423, 1436. No such question is presented in the instant case as payments are not in arrears. The right to retain security could not survive the termination of the alimony award. "When, therefore, the jurisdiction to pass a decree is ended, no jurisdiction can survive as to matters purely ancillary to that object." *McCurley v. McCurley*, 60 Md. 185, 189. *Johnson v. Johnson, supra*, 199 Md. 329, 339, 86 A. 2d 520, 524.

The appellee contends that even if the award terminated upon the passage of the Florida decree, which was not stayed by the Supreme Court of Florida or the Supreme Court of the United States, the award of alimony passed on November 15, 1948 was converted into a contractual obligation by the consent decree and stipulation as to substituted security filed January 5, 1951, after the Florida decree. It is pointed out that that order was made "subject to such further order of this Court as may from time to time be required in accordance with the original Decree of November 15, 1948, and any petitions of either party that may have been or shall be hereafter filed herein." We do not construe this clause as an agreement either as to the amount of the award or the type or amount of security, which matters were, in this order and in the previous

orders, made subject to change by the court upon petition or otherwise. Nor do we think that the voluntary action of the appellant in dismissing his pending petition to modify the award amounted to a waiver. Moreover, the stipulation on which the order was based did not contain any agreement as to alimony or property settlement, but on the contrary expressly "stipulated and agreed that the substitution of said stock in lieu of said cash shall be without prejudice to the rights of either party herein." The facts in the instant case do not bring it within the rule laid down in *Marshall v. Marshall*, 164 Md. 107, 109, 163 A. 874, and cases there cited.

The chancellor in his opinion filed in the instant case stated, "The only question here presented is as to the security which is now deposited in the hands of the Clerk, and as to that, it is conceded that there is still an obligation for the support of the child, which is one of the provisions of the decree, and, consequently, since there is that obligation, this court would still be justified, in view of the history of the case, in requiring security for the performance of that obligation, and since the security was selected by agreement of the parties, and was deposited as a result of an agreement and stipulation signed between them, it is like a consent decree which the court ought not to disturb in the absence of fraud or imposition, or some violent overreaching on the part of one of the parties which is wholly unjustified by the circumstances. And in view of the fact that the obligation for the support of the child, as conceded by both sides, still exists, the court feels that the petition for the discharge of the security in the hands of the Clerk ought to be denied."

As we have indicated, we think the argument as to a contractual obligation to pay the amount fixed by the award in lieu of alimony cannot be sustained, and the petitioner is not barred by the consent decree and stipulation from challenging the court's jurisdiction to enforce it. Nor did the stipulation foreclose a petition for further substitution or modification in amount. It is conceded

here, as it was conceded below, that the decree as to support for the child is still in effect and may be appropriately secured as against the nonresident petitioner. In fact, the petition only averred that the court was without jurisdiction "insofar as the payment of alimony or support to Mary B. Johnson is concerned, and that this Honorable Court should now modify its Decree of January 5, 1951 so as to release to your Petitioner the stock * * * now being held * * * to secure payment of alimony,". We think the court abused its discretion in refusing to modify its decree, insofar as it secured the payment of an award of $25 a week for the support of a child by the deposit of stock which, according to the testimony, has a present book value of $225,000. On the record, we cannot say what would be an adequate security. The factors to be considered would be the present age of the child, his present and future needs for education and maintenance until he reaches maturity, and the possibility that those needs may increase. If the parties cannot agree as to the amount, the Chancellor should fix an amount that will insure support for the child but eliminate the element of alimony.

> *Decree reversed and case remanded for the passage of a decree in accordance with the views expressed in this opinion, costs to be paid by the appellant.*

HAMMOND, J., delivered the following concurring opinion, in which SOBELOFF, C. J., concurred.

I concurred in the result in this case, not that I thought it right or desirable but rather that it was indicated by a decent respect for the rule of *stare decisis* and compelled by obedience to the principle of *res judicata*. On essentially the same facts, in a prior appeal between the same parties reported in 199 Md. 329, 86 A. 2d 520, this Court held that Maryland could not

compel the husband to pay for any necessaries of the wife or contribute to her support, for the reasons, (1) that the Florida Court had divorced the couple, (2) the Ecclesiastical Courts compelled alimony only where the couple were still technically husband and wife, although legally separated, and (3) even though by statute Maryland has authorized "alimony" where an absolute divorce is granted, and so may compel the man to pay the woman a named or later increased amount of support for an indefinite number of years after he has ceased to be her husband, this can be done only if it is begun in the divorce decree; or if, in lieu of this, there is substituted the magic words "the Court retains jurisdiction" (if these words appear, the man may have to *begin* support payments twenty years after he has ceased to be a husband) ; otherwise, the support payments would not be "alimony" as known to the Ecclesiastical Courts because, when sought, the man and the woman are strangers in the eye of the law.

A Maryland Court had awarded Mrs. Johnson a divorce *a mensa* and alimony secured by the deposit in Court of property of Mr. Johnson. When this decree was passed, Maryland had unquestioned jurisdiction of the wife, the husband, and the property. It still has jurisdiction of the wife and the property. Yet the Court in this appeal cuts off support for the wife because Florida has dissolved the marriage, and the jurisdiction of Maryland to continue that support dies with that dissolution; the result, under that reasoning, is the same no matter how the marriage ends—by death, by a Maryland divorce, or by a divorce in another State. *Johnson v. Johnson, supra.*

In some States the Courts have refused to penalize their citizens by blind adherence to an illogical theory. In these jurisdictions, the Courts hold that if another State has granted an *ex parte* divorce, the obligation of support for the wife which has been recognized by the Court of the home State will not be affected. The divorce is divisible in that it is valid as a dissolution of the

marital bonds but unavailing to relieve the husband of his duty of support. *Estin v. Estin,* 296 N. Y. 308, 73 N. E. 2d 113, affd. 334 U. S. 541, 68 S. Ct. 1213, 92 L. Ed. 1561. If the wife appears in the foreign divorce action, the jurisdiction of the Courts in the home State is superseded. This is because the foreign Court, having jurisdiction of both parties, has power to rule on the matter of support and its decree is *res judicata* and must be given full faith and credit by the home State. *Lynn v. Lynn,* 302 N. Y. 193, 97 N. E. 2d 748, 753, 28 A. L. R. 2d 1335. Since Mrs. Johnson appeared in the Florida case, it would seem at first blush as if she would be bound by the decree passed there, and even in a divisible divorce jurisdiction, would have no just ground for further relief in her home State. However, the Florida Court, in its amended decree, provided expressly that nothing therein should be held to relieve the husband from complying with the Maryland decree for the payment of support. Thus the rule of *res judicata* would not relieve the husband here if Maryland were a divisible divorce jurisdiction. In *Lynn v. Lynn, supra,* the New York Court of Appeals distinguished a case where a foreign divorce is granted *ex parte* from one where the wife appears, by saying first that an express denial of, or an award of, alimony would be conclusive, and then adding: "As long as the Court in the divorce action had personal jurisdiction of both parties, its decree, as rendered or as subsequently modified, must be taken to determine the husband's obligation of support, *and the failure to grant alimony is properly treated as the equivalent of a denial of such relief.* . . It follows, then, that the alimony provisions of a prior judgment of separation must yield to the overriding effect of the divorce decree." (Emphasis mine). Here the Florida Court negatived the idea that its failure to award alimony was the equivalent of a denial. In Florida, an unsuccessful defendant wife generally is entitled to alimony except where she is guilty of adultery, which is not the case here. Certainly, the Florida Court intended and expected that the

Maryland support payments would continue. I think that they should, and that Maryland Courts should have power to require them.

Under the reasoning and holding of *Staub v. Staub,* 170 Md. 202, 183 A. 605, if Mrs. Johnson had ignored the Florida divorce proceedings and the divorce had been granted *ex parte,* Maryland would have no jurisdiction to give or continue alimony. In these days of Nevada, Florida, Arkansas, and other prolific divorce States, this puts a separated wife in a real predicament. She is on the horns of a dilemma, having the alternative of submitting to the jurisdiction of a foreign Court, where as an out-of-state defendant, she is under a disadvantage in seeking alimony, or of ignoring the foreign divorce proceeding and losing the alimony granted by her home Court entirely. Under the mores and practices of the times, it is hardly fair for Maryland to put its lady citizens in this predicament because of a narrow, artificial and unrealistic concept and judicial interpretation of alimony.

I say narrow, artificial and unrealistic for this reason. Divorce was unknown under the common law, and is of statutory creation in Maryland. Limited divorces with alimony were granted in England by the Ecclesiastical Courts. Here the Legislature at first granted divorces but the Courts of Chancery assumed jurisdiction of alimony. By what is now Section 14 of Article 16 of the Code, passed in 1777, Courts of equity were expressly given alimony jurisdiction. The Act provided: "The Courts of equity of this State shall and may hear and determine all causes for alimony, in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical Courts there." Alimony as known to the Ecclesiastical Courts was support granted where there was a divorce *a mensa.* In 1841, by what is now Section 15 of Article 16 of the Code, the Legislature provided that in *all* cases where divorces were granted, alimony may be awarded. There is no definition of alimony in the Statutes, and, since

the Act of 1841, in exercising the jurisdiction granted by that Act, the Courts have modelled the support awarded in divorces *a vinculo* in the image of alimony as it had been known to the Ecclesiastical Courts. It is immediately apparent that the judicial concept of alimony as authorized by the Act of 1841 was illogical because under the ecclesiastical law, alimony is support of the wife by the husband as long as they are both living and are married to each other. The limited divorce granted by the Ecclesiastical Courts was nothing more than a legally authorized separation and did not destroy the status of husband and wife; therefore, it was entirely consistent and logical that the husband be required to support the wife even though they were living apart. Since the divorce *a vinculo* severs the matrimonial status, alimony in the traditional sense cannot rationally be compelled after an absolute divorce.

In reality, the alimony permitted by Section 15 of Article 16 of the Code is a legislative permission for the Court to require a *former* husband to pay support to his *former* wife. Indeed, under the holdings of this Court—*Emerson v. Emerson,* 120 Md. 584, 87 A. 1033, recognized by *Johnson v. Johnson, supra*—the support which the Court has required to be paid, may be increased or decreased, or otherwise controlled long after the marriage has ended, merely because the Court has jurisdiction at the time the divorce was granted. In the present case, the Court had jurisdiction at the time the alimony was awarded to Mrs. Johnson, and it is just as logical to say here that it does not lose that jurisdiction as it is to say that a Maryland Court which grants an absolute divorce and reserves jurisdiction may, years after the couple have ceased to be husband and wife, double, or triple, the amount of alimony originally granted. What I am saying is that there is no magic in the word "alimony" and the decisions which originally construed Section 15 of Article 16 might well have held that the Courts had jurisdiction to award support to a former

wife at any time it felt that the interests of justice and the parties required it.

The decisions show that the support awarded in an absolute divorce is not historical alimony and show the incongruous results which have flowed from the attempts to work with it as if it were. In *Emerson v. Emerson, supra,* it was decided that Section 15 of Article 16 was intended to provide for alimony "of the same character and limitations as the alimony the Courts had so long dealt with"; specifically, that it was a provision for support from income, not a division of property. It was held further that "jurisdiction exists in the Courts of Equity to modify that part of the decree providing for alimony whether the decree grants divorce *a vinculo* or *a mensa.*"

In *Clarke v. Clarke,* 149 Md. 590, 131 A. 821, the decision was that a decree of divorce *a mensa* which expressly provided that the wife should receive no alimony, may be modified in this respect even after enrollment, by reason of altered circumstances.

In *Marshall v. Marshall,* 162 Md. 116, 159 A. 260, 83 A. L. R. 1237, the Court said that unless an *a vinculo* decree either awards alimony, or reserves jurisdiction, the Court is powerless, after the decree has become enrolled, to award alimony. Under this decision, if the Court awarded alimony of one cent a year, it could at any time, years later perhaps, require the husband if his circumstances warranted it, to pay ten thousand dollars a year. Also, by adding four words—"The Court retains jurisdiction"—alimony could be given for the first time twenty years after the decree.

Clearly, if what the Legislature authorized were other than support for a former wife, no increase or commencement of "alimony" could be given years after a couple ceased to be man and wife merely because at the time of the divorce, some amount was awarded or four words were added to a decree.

In *Tome v. Tome,* 180 Md. 31, 22 A. 2d 549, it was held that although a Court may, in an absolute divorce,

compel the husband to pay the counsel fee of the wife, as well as alimony, and may at any time increase the alimony, yet the wife is not entitled to a counsel fee in her successful attempt to have the alimony increased, because she is no longer a wife.

The unfortunate distinctions in the results of the cases which have been produced by the restricted concept of alimony where there is an absolute divorce, are not likely to be cured by judicial decision for the reasons which prompted me to concur in this appeal. It is best, perhaps, if they are not. If a change is to be made in the established law, it would seem appropriate that the Legislature make it. The soundness and integrity of the judicial process are thus preserved.

There has been recent evidence that in both popular and legal thinking, technical distinctions between support and alimony are being eliminated. So that a Court could imprison for failure to pay support, as well as alimony, the Legislature and the people of Maryland, in 1950, amended Section 38 of Article 3 of the Constitution to provide that: ". . . a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a wife or dependent children, or for alimony, shall not constitute a debt. . ." This is certainly evidence from a fundamental source that support and alimony are, in substance, identical. See also the Uniform Reciprocal Enforcement of Support Act—Article 89C of the Code, first passed by the Maryland Legislature in 1950.

If the Legislature amended the law so that a Court would have the power to require support of a former wife at any time that the interests of justice and the parties required it, regardless of whether the divorce decree had provided for alimony or had retained jurisdiction, it would add flexibility where both parties are Maryland residents, or where, as in the instant case, the wife and the property of the husband are in Maryland. The result which could have been achieved and which I would have urged in the present case, if the

proposed change had been the law, would be far more fair and just than the result which had to come under the present state of the law.

Chief Judge SOBELOFF has authorized me to say that he concurs in this opinion.