## MARJORIE B. S. COLBURN *v.* JAMES B. COLBURN, JR.

[No. 173, September Term, 1973.]

*Decided March 8, 1974.*

348

The cause was argued before ORTH, C. J., and POWERS and MOORE, JJ.

*Theodore G. Bloom*, with whom were *Albert J. Goodman* and *Goodman & Bloom* on the brief, for appellant, cross-appellee.

*Samuel Schenker* and *Alan H. Legum*, with whom was *Natalie Zimmerman* on the brief, for appellee, cross-appellant.

ORTH, C. J., delivered the opinion of the Court.

This is the latest battle in the seemingly never ending war [1] triggered by the "desperate thing" [2] the marriage of

---

[1]. "Marriage is like life in this — that it is a field of battle, and not a bed of roses." Robert Louis Stevenson, Virginibus Puerisque, I. i.

[2]. "Marriage is a desperate thing, the ffrogs in ESOP were extreame wise, they had a great mind to some water but they would not leape into the well, because they could not gett out againe." *Table Talk of John Selden*, (Pollock ed. 1928).

MARJORIE B. S. COLBURN (Wife) and JAMES B. COLBURN, JR. (Husband) proved to be. Their present marital status is that Wife, after extended proceedings (suit commenced 20 January 1970), was granted a divorce *a mensa et thoro* by decree of the Circuit Court for Anne Arundel County, filed 21 April 1971, which we affirmed on appeal, *Colburn v. Colburn*, 15 Md. App. 503, and on 14 December 1971, Husband obtained a divorce *a vinculo matrimonii* in an *ex parte* proceeding before the Circuit Court of the Seventeeth Judicial Circuit of Florida, Broward County. There were two preliminary skirmishes concerning property rights of the parties, which were bitterly fought in the lower courts and the Court of Appeals, *Colburn v. Colburn*, 262 Md. 333 and *Colburn v. Colburn*, 265 Md. 468.

The decree of the Circuit Court for Anne Arundel County granting Wife a divorce *a mensa et thoro*, awarded her alimony in the amount of $650 a month and gave Husband custody of their mentally retarded son, with responsibility to support him, but with visitation rights in Wife.[3] It was shortly after this decree that Husband moved to Florida and established residency. He fell delinquent in the payment of alimony. Wife filed a petition requesting the court to cite Husband in contempt for failure to make the required alimony payments and subsequently requested an adjustment of her visitation rights alleging that Husband had "unreasonably, arbitrarily and capriciously made it difficult ... to exercise such visitation rights on many occasions and impossible on some occasions." An order modifying Wife's visitation rights issued from the Circuit Court for Anne Arundel County on 15 December 1971 and was amended on 5 January 1972.[4] Upon the grant of the divorce in Florida, Husband terminated all alimony

**3.** The decree also ordered Husband to pay fees to Wife's counsel in the amount of $3750, and $300 to two medical experts who testified for her. Husband's cross-bill seeking a divorce *a mensa et thoro* was dismissed. We affirmed all of this. 15 Md. App. 503.

**4.** The purpose of the decree was to "fix and make certain" wife's visitation schedule. The amendment resulted from an inadvertent discrepency between the court's summary in open court on 7 December 1971 and the order filed 15 December 1971. The amendment granted Wife visitation rights during the Easter holiday of each year.

payments. On 17 January 1972 Wife petitioned the Circuit Court for Anne Arundel County for an order that Husband's assets and property located in Maryland be sequestered and that the rents and profits therefrom be applied to the satisfaction of Husband's alimony arrearage and future obligations. An order so directing issued on 18 January 1972. On 27 January 1972 Husband moved to quash the order because Wife was "seeking to harass him unnecessarily", and on 4 February 1972 moved to "modify or terminate alimony and visitation rights" on the ground that the Florida divorce decree relieved the Maryland courts of "authority to continue alimony payments" as well as jurisdiction over the custody of the minor child. The motion to quash was denied, and Husband, pursuant to the denial of Wife's Motion *Ne Recipiatur*, was permitted to refile his motion of 4 February 1972.[5] On 28 July 1972 Husband again moved to modify or terminate alimony and visitation rights and filed a motion to terminate sequestration. On 28 September 1972 Wife petitioned for a monetary decree for back alimony and moved for summary judgment.

The motions were brought on for hearing on 10 December 1972 and Wife presented her testimony. The court continued the hearing to permit Husband to appear with a current accounting as demonstrative of a "change in circumstances" sufficient to warrant a reduction in his alimony obligation. The hearing resumed on 16 January 1973. Husband presented his testimony, and the solicitors for Husband and Wife argued the matter. On 25 January 1973 the court filed its decree which:

1) denied Husband's motion to terminate sequestration;

2) reduced Husband's obligation for permanent alimony from $650 per month to $400 per month;

---

**5.** Wife's Motion *Ne Recipiatur* requested that the court not receive Husband's "motions to modify and/or terminate alimony and visitation rights." The court thought a denial of Wife's motion was appropriate as the Court of Special Appeals rendered its decision (15 Md. App. 503) subsequent to its filing.

3) adjusted the annual visitation schedule to allow the minor child to visit Wife at her residence five days during the Christmas holidays, from 26 December until 30 December.

Wife appealed from those portions of the decree which reduced alimony and altered the visitation periods. Husband cross-appealed.

Wife, as appellant, contends:

"I. The parties having entered into a stipulation with respect to changing the visitation schedule previously established, the Chancellor erred in modifying Appellant's visitation rights in disregard of that stipulation.

II. It was an abuse of discretion for the Chancellor to continue, indefinitely, the hearing on Appellee's motion to modify or terminate alimony when the Appellant failed to appear at the hearing on November 10, 1972, and was unable to present sufficient evidence to support that motion.

III. The Chancellor erred in reducing alimony upon the basis of the evidence submitted and for the reasons stated."

Husband, as appellee, answers:

"I. The possibility of a mistake in the identification of dates in the decree with regard to the wife's visitation privileges should be determined by the lower court pursuant to its revisory power under Md. Rules 625 and 681.

II. It is beyond the scope of review to consider the chancellor's ruling on continuing the hearing below since this question was never presented to the lower court.

III. It was proper for the chancellor to modify a prior award of alimony based on the gross

amount of assets of the wife, her current income and the husband's financial situation."

Husband, as cross-appellant, claims:

"I. Article 16, Sections 3 and 5 of the Annotated Code violate the Equal Protection Clause of the Fourteenth Amendment.

II. The award of alimony in Maryland pursuant to a decree of divorce *a mensa et thoro* obtained by the wife did not survive the subsequent Florida divorce decree granting husband divorce *a vinculo matrimonii*.

III. The award of alimony to the wife should be terminated and/or modified.

IV. The Maryland courts are without jurisdiction to modify the visitation rights of the wife with regard to the minor child."

Wife, as cross-appellee, replies:

"I. The cross-appellant waived any right to assert, on this appeal, that Article 16, Sections 3 and 5 of the Annotated Code of Maryland violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, by failing to raise and assert that issue during the original trial of this divorce action, or appeal from the decree of April 21, 1971, or in his motion to quash the writ of sequestration, and by failing to appeal from the order denying his motion to quash the writ of sequestration.

II. Article 16, Sections 3 and 5 of the Annotated Code of Maryland are not unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

III. Having asserted in a prior motion that his

obligation to pay alimony terminated by reason of the *ex parte* divorce *a vinculo matrimonii* he obtained in Florida, and having failed to appeal from an adverse decision on that issue, the cross-appellant is precluded from raising that issue on this appeal.

IV. Under the circumstances of this case, the *ex parte* divorce obtained by the cross-appellant in Florida did not terminate his obligations to pay alimony previously awarded the cross-appellee.

V. There was insufficient evidence to support a reduction in alimony.

VI. The *ex parte* Florida divorce decree did not oust the Circuit Court's continuing jurisdiction over child custody and visitation."

We group these arguments into three categories:

1) The Constitutional Question.
2) The Payment of Alimony.
3) The Visitation Rights.

(1)

## THE CONSTITUTIONAL QUESTION

Code, Art. 16, § 3 provides: "In cases where a divorce is decreed, alimony may be awarded." Section 5 (a) of the Article, however, sets out a proviso: "In all cases where alimony or alimony pendente lite and counsel fees are claimed, the court shall not award such alimony or counsel fees unless it shall appear from the evidence that the wife's income is insufficient to care for her needs." On 7 November 1972, Art. 46, Declaration of Rights, Constitution of Maryland, was ratified, and became effective 5 December 1972, guaranteeing: "Equality of rights under the law shall not be abridged or denied because of sex." Husband urges that the provisions of § 5 (a) offend the constitutional guarantee, relying on *Frontiero v. Richardson*, 411 U. S. 677.

Assuming arguendo that the question is properly before us, *Minner v. Minner*, 19 Md. App. 154, is dispositive of it. The rationale of *Minner* is found in our "* * * accord with the two rules which the Supreme Court has stated it feels bound to follow in its consideration of the constitutionality of a statute: 'one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration*, 113 U. S. 33, 39. In *United States v. Raines*, 362 U. S. 17, 21, the Court said that '[k]indred to these rules is the rule that one will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional.' " At 158. We held, at 159: "We do not so construe the provisions of Art. 46 of the Declaration of Rights as to abridge or deny a wife the right to be awarded alimony and counsel fees because a husband may have no right to such award. An obligation, not a right, of Husband is here involved. The obligation of Husband to pay alimony and counsel fees as decreed by the court in the exercise of its clear authority is not vitiated by the constitutional mandate. It may be that if a husband seeks and is denied sustenance and counsel fees upon proof of circumstances such as would entitle a wife to alimony and counsel fees, he would then have standing to invoke the dictates of Art. 46. But that situation is not in this case existent. The application of the statutes is constitutional as to Husband and he will not be heard to attack them on the ground that impliedly they might be taken as applying to other persons or other situations in which their application might be unconstitutional." We did not believe that *Frontiero v. Richardson, supra,* compelled a contrary view. As we said in *Minner,* at 161: "We shall apply [Art. 46] in a case properly invoking it." This is not such a case.[6]

---

6. In a letter to this Court dated 10 January 1974 Husband's solicitor calls our attention to an opinion of the Superior Court of the County of

## (2)

## THE PAYMENT OF ALIMONY

In 1777 the General Assembly of Maryland in an "Act Concerning Marriages", ch. 12, § 14, declared "That the chancellor shall and may hear and determine all causes for alimony, in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical courts there." The statute endures to this day.[7] The result has been that for a hundred and ninety-two years, until 1969, Maryland remained steadfast in its adherence to the rule, despite a departure therefrom by many other states, that the court had no authority to make, change or enforce provision for payment by a former husband to his former wife of alimony (except power reserved, expressly or by implication, to modify provision for alimony in a decree for divorce *a vinculo*) or "suit money". It was immaterial whether the marriage relationship was terminated by death, by a Maryland divorce, or by a divorce in another state.[8] *Staub v. Staub*, 170 Md. 202 (1936); *Johnson v. Johnson*, 199 Md. 329 (1952); *Johnson v. Johnson*, 202 Md. 547 (1953); *Brewster v. Brewster*, 204 Md. 501 (1949);[9] *Upham v.*

---

Fulton, Georgia, *Murphy v. Murphy*, file No. 13-75633, dated 21 December 1973, which held that the alimony statutes of that state (Title 30, Sections 201, 202, 202.1, 203, 204, 206, 207, 209 and 212) unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment. The court based its decision on *Frontiero v. Richardson, supra,* and *Reed v. Reed,* 404 U. S. 71. We are not persuaded by *Murphy* to depart from our holding in *Minner*.

7. As later codified the only change was to substitute "The courts of equity of this State" for "That the chancellor." See Code (1957), Art. 16, § 2. Ch. 2, Acts 1973, First Extraordinary Session, codified as Courts and Judicial Proceedings Article (Courts Art.) § 3-603, made only stylistic changes: "The court shall hear and determine a case of alimony in as full and ample manner as such case could be heard and determined by the Ecclesiastical Courts of England."

8. Compare the "divisible theory" of divorce, holding that the divorce is divisible in that it is valid as a dissolution of the marital bonds but unavailing to relieve the husband of the duty to support. *Estin v. Estin,* 334 U. S. 541. See note, *Divisible Divorce,* 76 Harvard L. Rev. 1233 (1963); Note, *Divisible Divorce in Maryland — Does it Exist?* 30 Md. L. Rev. 63 (1970); Myerberg, H., *The Practical Aspects of Divorce Practice,* 2nd ed. 1961, p. 74. See also Mayers, *Ex Parte Divorce; A Proposed Federal Remedy,* 54 Columbia L. Rev. 54 (1954); Morris, *Divisible Divorce,* 64 Harvard L. Rev. 1287 (1951); Reese & Johnson, *The Scope of Full Faith and Credit to Judgments,* 49 Columbia L. Rev. 153 (1949).

9. In *Brewster,* the court said, 506-507: "The authorities in different

*Upham*, 238 Md. 261 (1965).[10] The provisions of Acts 1841, ch. 262, § 3, codified in the 1951 Code as Art. 16, § 15, and in the 1957 Code as Art. 16, § 3, that "In cases where a divorce is decreed, alimony may be awarded", was not considered to affect the rule.

In the second *Johnson* case, however, decided 12 June 1953, two members of the Court of Appeals of Maryland voiced their disenchantment with the Maryland position. Hammond, J., later Chief Judge, in a concurring opinion in which Chief Judge Sobeloff concurred, expressed the belief that Maryland's "blind adherence to an illogical theory" put a separated wife in a real predicament. "She is on the horns of a dilemma, having the alternative of submitting to the jurisdiction of a foreign Court, where as an out-of-state defendant, she is under a disadvantage in seeking alimony, or of ignoring the foreign divorce proceeding and losing the alimony granted by her home Court entirely." He declared: "Under the mores and practices of the times, it is hardly fair for Maryland to put its lady citizens in this predicament because of a narrow, artificial and unrealistic concept and judicial interpretation of alimony." 202 Md., at 558. He explained why he thought the concept and interpretation "narrow, artificial and unrealistic", at 558-559:

> "Divorce was unknown under the common law, and is of statutory creation in Maryland. Limited divorces with alimony were granted in England by the Ecclesiastical Courts. Here the Legislature at first granted divorces but the Courts of Chancery assumed jurisdiction of alimony. By what is now Section 14 of Article 16 of the Code, [now Art. 16, §

---

jurisdictions are in conflict as to whether the power to award alimony survives the marriage relationship. Maryland is on the side of those which hold that it does not. * * * The Maryland rule that after the marriage status has been dissolved, whether by a Maryland divorce or by a foreign divorce, the Maryland court has no power to award or enforce alimony or to deal with matters purely ancillary to the marriage status, leads to the conclusion, which we reach, that the power of the court ceases as of the date of the decree which dissolves the marriage."

10. "The rule in Maryland is that after the dissolution of the marital relationship, whether by decree of this or another state, the courts of this State are precluded from awarding alimony." *Upham*, at 265.

2] passed in 1777, Courts of equity were expressly given alimony jurisdiction. The Act provided: 'The Courts of equity of this State shall and may hear and determine all causes for alimony, in as full and ample manner as such causes could be heard and determined by the laws of England in the Ecclesiastical Courts there.' Alimony as known to the Ecclesiastical Courts was support granted where there was a divorce *a mensa.* In 1841, by what is now Section 15 of Article 16 [now Art. 16, § 3] of the Code, the Legislature provided that in *all* cases where divorces were granted, alimony may be awarded. There is no definition of alimony in the Statutes, and, since the Act of 1841, in exercising the jurisdiction granted by that Act, the Courts have modelled the support awarded in divorces *a vinculo* in the image of alimony as it had been known to the Ecclesiastical Courts. It is immediately apparent that the judicial concept of alimony as authorized by the Act of 1841 was illogical because under the ecclesiastical law, alimony is support of the wife by the husband as long as they are both living and are married to each other. The limited divorce granted by the Ecclesiastical Courts was nothing more than a legally authorized separation and did not destroy the status of husband and wife; therefore, it was entirely consistent and logical that the husband be required to support the wife even though they were living apart. Since the divorce *a vinculo* severs the matrimonial status, alimony in the traditional sense cannot rationally be compelled after an absolute divorce."

He found that "In reality, the alimony permitted by Section 15 [now § 3] of Article 16 of the Code is a legislative permission for the Court to require a *former* husband to pay support to his *former* wife." *Id.,* at 559. He cited *Emerson v. Emerson,* 120 Md. 584, *Clarke v. Clarke,* 149 Md. 590, *Marshall v. Marshall,* 162 Md. 116, and *Tome v. Tome,* 180

Md. 31, as indicating that the support awarded in an absolute divorce is not historical alimony and as showing the incongruous results which have flowed from the attempts to work with it as if it were.

Despite the strong views shared by Judge Hammond and Chief Judge Sobeloff, and so forcefully expressed, they did not dissent from the result reached by a majority of the Court, not because they thought the result right or desirable, but because that result was "indicated by a decent respect for the rule of *stare decisis* and compelled by obedience to the principle of *res judicata*" in the light of the holdings in the first *Johnson* case, 199 Md. 329. It seemed desirable to them that the rule be changed by Legislative action: "The unfortunate distinctions in the results of the cases which have been produced by the restricted concept of alimony where there is an absolute divorce, are not likely to be cured by judicial decision for the reasons which prompted me to concur in this appeal. It is best, perhaps, if they are not. If a change is to be made in the established law, it would seem appropriate that the Legislature make it. The soundness and integrity of the judicial process are thus preserved." 202 Md., at 561.[11]

In *Clayton v. Clayton*, 231 Md. 74 (1963), there was a challenge to the authority of the divorce court to award alimony to a wife incident to a decree of divorce on the ground that her husband had another wife living at the time of the marriage. One of the grounds for a divorce *a vinculo* was "for any cause which by the laws of this State, render a marriage null and void ab initio," Code, Art. 16, § 24, which the Court thought encompassed bigamy. The argument was that alimony could be granted only for causes cognizable in the ecclesiastical courts under Code, Art. 16, § 2, and those courts granted alimony only where there was a divorce *a*

---

11. "If the Legislature amended the law so that a Court would have the power to require support of a former wife at any time that the interests of justice and the parties required it, regardless of whether the divorce decree had provided for alimony or had retained jurisdiction, it would add flexibility where both parties are Maryland residents, or where, as in the instant case, the wife and the property of the husband are in Maryland." *Idem.*

*mensa* and the marital status subsisted. The Court stated that § 3 of Art. 16 "* * * was specifically designed to enlarge the jurisdiction of the equity courts beyond what was confined by Sec. 2, and to authorize the award of support beyond the scope of historical alimony." [12] At 76. It read "alimony" in § 3, "not in the technical sense of the word, but as commensurate with 'support'." At 77. Recognizing that alimony is not generally allowed in any case where the marriage is declared to be null and void ab initio in the absence of statute, the Court found that "* * * inclusion of prevenient invalidity as a ground for divorce must be ascribed some meaning, and we think it shows a legislative intent to permit an award of alimony in a proper case." *Idem.* The Court noted, at 77-78: "If other questions relating to voidable marriages and annulments are left unanswered, that is a matter for legislative consideration * * *."

Even though the Court of Appeals adhered to the rule deplored in the concurring opinion in the second *Johnson* case in deciding *Brewster v. Brewster, supra,* a year later, and in deciding *Upham v. Upham, supra,* two years after the decision in *Clayton,*[13] it seems that by 1969 the time was ripe for a change of judicial attitude in two areas. The Court of Appeals appeared no longer content to await Legislative action regarding the rule that an unimpeached foreign decree granting an absolute and final divorce to the husband [14] would deprive the courts of this State of power to

---

**12.** The Court observed that in *Foote v. Foote,* 190 Md. 171, 180-181, it held that alimony could be allowed, by reading §§ 3 and 24 together, incident to a grant of divorce on the ground of voluntary separation, a ground entirely unknown to the ecclesiastical courts or the common law. The Court referred to the holding in *Staub v. Staub, supra,* but thought that the subsequent statutory authority of voluntary separation as a ground for an absolute divorce in the face of Art. 16, § 3, indicated a legislative intent to permit the grant of alimony. This holding was again asserted in *Hughes v. Hughes,* 216 Md. 374, 377.

**13.** In *Upham,* at 265, the Court flatly said that there was nothing in *Clayton* to compel a contrary result. It referred to *Staub* as authority that "the right to maintain a proceeding for alimony ends with the dissolution of the marriage."

**14.** A foreign divorce decree is entitled to and must be given presumptive validity and full faith and credit in Maryland unless and until it is judicially impeached by proof that the husband did not acquire a valid domicile in the foreign jurisdiction as held by the court of that jurisdiction. *Brewster v.*

award the wife monetary support for herself, or enforce the grant of such support in a prior decree, and seemed to think it time to ease, at least to some extent, the strictures of the rule. "The Legislature has not seen fit to respond to the suggestions in the concurring opinion in the second *Johnson* case or to those in *Clayton* and we now take the view that the rule of the *Johnson* cases restating the earlier cases should be reexamined and relaxed, since in *Clayton* we did change the established concept of alimony in cases of absolute divorce by reading 'alimony' in § 3 of Art. 16 of the Code as commensurate with 'support' and allowable where there never was the legal relation of husband and wife and thereby changed the concept of statutory alimony which underlay the rule of the *Johnson* cases and the earlier cases on which they relied." *Dackman v. Dackman*, 252 Md. 331, 344-345, decided 7 February 1969.

In *Dackman*, at least some of the views on the matter of Judge Hammond, by then Chief Judge of the Court of Appeals, had the approval of all the members of the Court, and he spoke for them. He set out the factual posture of the case: "The appellant husband and the appellee wife were married in 1951 and lived together in or near Baltimore until late in 1967, when the husband went to Nevada on November 21 with his new found love, and established residence. He filed suit for divorce on January 15, 1968, some eight weeks after he arrived, and on February 14 next was granted a divorce, and promptly married his paramour. The wife did not submit to the jurisdiction of the Nevada courts and was not summoned in Nevada." 252 Md., at 333. While the husband was establishing his Nevada domicile, the wife filed a suit in the Circuit Court No. 2 of Baltimore City seeking permanent alimony on the basis of his adultery, and custody of and support for the four children of the couple, as well as injunctive relief to prevent the husband from removing from Maryland considerable assets. The husband appealed from an order of the court below denying his

---

*Brewster, supra*, 504-505; *Colby v. Colby*, 217 Md. 35, *cert. denied sub nom Appleby v. Colby*, 358 U. S. 838; *Day v. Day*, 237 Md. 229; *Staley v. Staley*, 251 Md. 701.

motion to dismiss because of lack of personal jurisdiction. In remanding the case without affirmance or reversal for further proceedings,[15] the Court of Appeals reviewed the history of the Maryland law as it stood theretofore. It then proceeded to relax that law. It did so on the basis that "* * * a court of equity has inherent power, independent of its authority to grant a divorce, to entertain and grant an application by a wife against her husband for alimony where he is at fault. *Taylor v. Taylor*, 108 Md. 129; *Woodcock v. Woodcock*, 169 Md. 40; *Walker v. Walker*, 125 Md. 649; *Wathen v. Wathen*, 245 Md. 684, 686. Section 2 of Art. 16 of the Code, enacted in 1777, declares this inherent power. Where the court cannot obtain jurisdiction in personam over the husband it may award support, if the wife proves misconduct or behavior which would justify granting her a divorce,[16] payable from property of the husband within the court's jurisdiction. *Commonwealth of Penna. v. Warren*, 204 Md. 467." [17]

Code, Art. 16, § 4, provides:

"In any decree for divorce against a nonresident, where alimony is prayed in the bill of complaint, and the same sets forth that the nonresident defendant is possessed of property in the State, the court shall have full authority to award alimony, and any property in the State of any person against whom alimony may be so awarded shall be liable for the same and subject to such decree as the court may pass in the premises. Any order of the court awarding alimony pendente lite shall have the same force and effect as in decree for divorce."

---

**15.** "We have concluded, however, that the substantial merits of the matter before us will not be furthered or determined unless the case is remanded under Maryland Rule 871 a without affirmance, reversal or modification, and that the purposes of justice will be advanced by permitting further proceedings in the case." 252 Md., at 336.

**16.** The Court observed that the wife in *Dackman* had not sought a divorce and, as long as the Nevada decree stood unimpeached, could not obtain one as such in Maryland. 252 Md., at 345.

**17.** The Court quoted at length from *Commonwealth of Penna. v. Warren, supra,* at 472-473, in support of its view.

What *Dackman* said was that, an equity court, under its inherent right and power, could act in cases in which only support was sought, similarly to the way it may act in a decree for a divorce under the authority bestowed by Art. 16, § 4. The precise holding was that a court of equity has the inherent right and power to require sequestration or attachment of a non-resident husband's property within its jurisdiction as a source of support and maintenance to a legally and factually deserving wife and to award her that support and maintenance from the property. The real significance of the holding, however, was that the court has this right and power despite a decree of divorce granted by a foreign state without the wife being personally before the foreign court. It is clear that this was a departure from the former rule followed in Maryland, even though the Court expressly limited its decision and holding to the particular facts of the case before it. 252 Md., at 346.[18]

The basic circumstances of the case before us are so similar to those of *Dackman* as to be, to all intent and purpose, indistinguishable. As in *Dackman* the marital domicile was in Maryland for many years, the deserted wife continued to live in Maryland, the fault which justified support and maintenance took place in Maryland, there is ample property in Maryland to furnish the support, and the foreign divorce was granted without the wife being personally before the court. The only differences are that here the fault was desertion, not adultery, and that here Wife had sought and obtained an *a mensa* divorce in Maryland. We find, on the facts, that exception to the rule as enunciated in *Dackman* applies to the case before us. We hold that the Florida divorce decree did not preclude the

---

18. The Court summarized the circumstances of the case:

   1) the marital domicile was in Maryland for many years;
   2) the deserted wife continued to reside in Maryland;
   3) the adultery which was the fault which justified support and maintenance took place in Maryland;
   4) there was ample property in Maryland to furnish the support;
   5) the foreign divorce was granted without the wife being personally before the court.

court below from awarding or enforcing the payment of alimony [19] by Husband to Wife. The award of alimony in Maryland to Wife pursuant to the decree of divorce *a mensa* survived the subsequent Florida divorce decree granting Husband a divorce *a vinculo*. Therefore, the court below could properly order sequestration and attachment of Husband's property within its jurisdiction to enforce the payment of alimony.[20] It did not err in denying a motion to quash the writ of sequestration or in refusing to terminate alimony because of the Florida divorce decree.[21]

Husband claims that the chancellor was wrong in awarding alimony to Wife because it did not appear from the evidence that her income was insufficient to care for her needs. Code, Art. 16, § 5 (a). He urges that the chancellor was clearly erroneous even in ordering the reduced amount of $400 and contends that on the evidence alimony should have been terminated completely. Wife, on the other hand, asserts that the chancellor erred in reducing the alimony and that it should have been maintained at the original amount.

---

**19.** "Alimony" as used in Code, Art. 16, § 3, is commensurate with "support", as was indicated in *Clayton v. Clayton, supra,* at 77.

**20.** Whether the property in Maryland of Husband is liable for the payment of alimony awarded Wife under Code, Art. 16, § 4, or under the inherent right and power of the court in equity to so order, is not here material. Technically, the statute applies when, in any decree for divorce against a nonresident, alimony is prayed in the bill of complaint, and the inherent power of the court comes into play when alimony, but not a divorce, is sought. At the time Wife filed her bill of complaint and at the time of the original decree awarding alimony, Husband was evidently a resident of Maryland. He thereafter became a resident of Florida and obtained a divorce there. As far as the record before us discloses, he was a nonresident of Maryland at the time of the decree of 25 January 1973. We believe that either the statute or the inherent power of the court, depending on the circumstances, would make a nonresident's property in Maryland liable for alimony which a Maryland court in equity had power to order paid.

**21.** Wife argues that Husband is precluded from raising the issue of alimony terminating upon the entering of the Florida divorce decree. She alleges that on 19 January 1972 the court below issued a writ of sequestration, that Husband's motion to quash the writ was denied by order of 31 January 1973, and that no appeal was taken therefrom. She claims the order denying the motion to quash was immediately appealable under Code, Art. 5, § 7 (h), now covered by Courts Art. § 12-303 (a). Several months later Husband raised the point again in a motion to terminate or modify alimony. Wife asserts the point is *res judicata* in the present appeal. In the light of our holding we do not decide that issue. But see Rule 1087.

In *Colburn v. Colburn*, 15 Md. App. 503, we affirmed the award of alimony to Wife in the amount of $7800 a year ($650 a month) based on the chancellor's finding that Wife needed $12,300 a year to maintain her standard of living and had an income from savings accounts and securities of $4500 a year. We have reviewed the evidence adduced at the two day hearing on Husband's motion to modify or terminate alimony. There was legally sufficient evidence to show that Wife's assets had increased $100,000 as the chancellor found. Wife said, without objection, that her income was $10,050 a year, but claimed that her expenses had increased to $16,800 a year. This Court has the right to review the amount of alimony allowed by a trial judge, but the amount will not be disturbed on appeal unless there has been an abuse of discretion by the chancellor, or his judgment is clearly wrong. *Willoughby v. Willoughby*, 256 Md. 590; *Crandall v. Crandall*, 14 Md. App. 476. See *Waters v. Waters*, 191 Md. 436; *Quinn v. Quinn*, 11 Md. App. 638. We do not find the chancellor abused his discretion in reducing the alimony payment, and in setting the amount at $400 a month upon consideration of Husband's overall financial ability to pay and Wife's need for support, or that his judgment on the evidence adduced was clearly wrong. Rule 1086.

An adjunct contention to those concerning the award of alimony is Wife's assertion that it was an abuse of discretion for the chancellor to continue, indefinitely, the hearing held 10 November 1972, on the motion to modify or terminate alimony. Husband was not present at the hearing. Wife testified and offered evidence. Apparently there was to be a sale of some assets the latter part of November. The chancellor said he was in a position of having to speculate on what was going to happen the latter part of November: "I think really this case should not have been heard until after November, at least on this point." He announced that he was going to continue the hearing "* * * and maybe at that time we can go over the whole thing again, because I can't make a decision now because definitely everybody agrees that the figures aren't there and that I should consider them, and I'm certainly not going to decide on this hearing and then go

ahead and have another hearing after November, after November 24th because I'm not going to compound these hearings either, and we might just discard all of the facts we've got in this case all day and go back after November 24th and decide it when the rest of the money comes in." The chancellor correctly thought that the issue before it had to be determined in the light of the economic status of both Husband and Wife, and he did not want to arrive at a decision without adequate evidence regarding Husband's financial status. He continued the hearing, leaving up to counsel to have it later set down.

The record indicates, as Husband now claims, that Wife made no objection to the continuance sufficient to preserve the matter for appellate review. Rule 1085. But we need not dispose of the contention on that basis. The chancellor had the discretion, on his own motion, to continue the hearing as the interests of justice required. Rule 527 a 1. We see no abuse of that discretion. Unless a judge acts arbitrarily or prejudicially in exercising that discretion, his decision will not be changed on appeal. *State Roads Commission v. Wyvill*, 244 Md. 163; *Brooks v. Bast*, 242 Md. 350; *Green v. Director*, 3 Md. App. 1.

### (3)

### THE VISITATION RIGHTS

The decree of 21 April 1971 granted custody of Joseph Colburn (Joseph), minor child of Husband and Wife, to Husband "with reasonable and liberal visitation rights" reserved to Wife. On 15 December 1971, the chancellor, finding it in the best interests of the child "to fix and make definite provisions for visitation of such child with his mother," modified the prior decree to that end. Wife was granted the right to visit Joseph and have him visit her at her residence each year:

1) for a period of 5 days during the Thanksgiving holiday season;

2) for a total of 6 weeks during the summer, the 6 weeks not consisting of more than 3 separate

visits, the first of which not beginning prior to 1 July;

3) for not more than 2 visits of 4 days duration within the State in which Joseph resides.

Husband was to provide transportation for Joseph. Wife was to notify Husband of the time of visits as was prescribed in minute detail.

On 3 January 1972, the order of 15 December 1971 was amended to include the right of Wife to visit Joseph and have him visit her at her residence for a period of 5 days during the Easter holiday season of each year.

Husband subsequently moved to terminate the visitation rights. The matter was heard on 16 January 1973.[22] At the hearing the chancellor observed that it had been suggested that Joseph visit Wife on Christmas rather than Thanksgiving. The chancellor said that he had suggested Thanksgiving "because usually when you go down to Florida you go down for the winter, and I figured if he was down there he would rather come up here in the Fall * * * than in the winter * * *." He added that if Husband did in fact come to Maryland during Christmas, "it would be logical and convenient and not inconvenient to her and probably more convenient to the boy." Wife said she would be delighted to substitute a Christmas visit for the Thanksgiving visit. The chancellor said he thought it ought to be changed to Christmas "if there is no objection." Counsel said the change was agreeable to Husband and to Wife, and the hearing proceeded to other matters.

By a decree of 25 January 1973, the chancellor disposed of all matters considered at the hearing. It rescinded "the visitation rights as granted by Order of this Court of January 3, 1972," and spelled them all out again. The net effect of the change was to delete the Thanksgiving visit and designate a visit to Wife's residence "from the morning of

---

22. Husband's motions to terminate sequestration, to modify or terminate alimony, for a monetary decree and for summary judgment were also then heard.

December 26 until late afternoon of December 30, of each year."

Wife, as appellant, contends the chancellor erred in modifying her visitation rights in disregard of the stipulation. Husband counters by asserting that "the possibility of a mistake in the identification of dates * * * should be determined by the lower court pursuant to its revisory power under Md. Rules 625 and 681."

We find no written stipulation in the record. If there was an oral "stipulation" at the hearing, it was far from definite. The original order gave the visitation right for a period of 5 days during the Thanksgiving holiday season. If Thanksgiving day was included, it was not so expressly provided. We do not find that Christmas day was specifically mentioned during the hearing, and the subsequent order covered the Christmas holiday season. The chancellor was not bound by what Husband and Wife preferred, or agreed upon, in any event. *Fainberg v. Rosen*, 12 Md. App. 359. We can only conclude that the chancellor believed it to be in the best interest of the child that he spend Christmas day with his father, and we cannot find to the contrary even on our independent appraisal. *Kirstukas v. Kirstukas*, 14 Md. App. 190; *Sullivan v. Auslaender*, 12 Md. App. 1.

Husband, as cross-appellant, contends that the Maryland courts are without jurisdiction to modify the visitation rights of Wife. He relies on the Florida divorce decree [23] as invoking the full faith and credit clause of Art. IV, § 1 Constitution of the United States. Wife maintains that the Florida decree did not oust the Maryland court's continuing jurisdiction over the custody of Joseph and Wife's rights of visitation. She is correct.

Code, Art. 16, § 66 (f) provides:

"In all cases where one party to a marriage, existing

---

**23.** The Florida decree provided: "That the care, custody and control of the minor child of the parties, Joseph S. Colburn, is granted to the husband, James B. Colburn, Jr., subject to the Respondent's [Wife] right of reasonable visitation privileges."

or pre-existing, removes or has removed a child or children of the marriage from this State, the courts of equity of this State shall exercise jurisdiction to determine custody or visitation rights of the child or children so removed, if:

(1) Maryland was the matrimonial domicile of the parties or the domicile where the marriage contract was last performed; and

(2) Such court shall have obtained personal jurisdiction of the party so removing the child or children; and

(3) One of the parties to said marriage shall have been at the time of said removal, a resident of the State of Maryland and shall continue to reside therein.

Nothing in this subsection shall be construed in any way to limit or modify other methods by which courts of equity obtain jurisdiction to determine the custody or visitation rights of children."

The provisos were here fully met. The statute is dispositive of Husband's contention. See *In re Karol,* 11 Md. App. 400. We have no need to look to other reasons why the court below kept its jurisdiction over Joseph's custody and visitation rights regarding him. See Code, Art. 16, § 25 and § 66 (a), now Courts Art. § 3-602 (a). The statute is in nowise constitutionally repugnant to the full faith and credit clause in the circumstances.

> *Decree of 25 January 1973 affirmed; each of appellant (cross-appellee) and appellee (cross-appellant) to pay one-half costs.*