467 A.2d 1039

Linda Ann KOMOROUS

v.

Edward Joseph KOMOROUS.

No. 46, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Nov. 9, 1983.

James J. Fitzgibbons, with whom was Joseph C. Roesser, Wheaton on brief, for appellant.

James P. Sullivan, Rockville, for appellee.

Argued before WEANT, BISHOP and ADKINS, JJ.

BISHOP, Judge.

In this domestic relations case, Linda Ann Komorous appeals an order of the Circuit Court for Montgomery County in which the chancellor granted her a monetary award of $2,000.00 without first determining the value of the marital property. Edward Joseph Komorous cross-appeals from the chancellor's refusal on September 23, 1982, to vacate the award of alimony *pendente lite* granted on January 7, 1981.

*Facts*

On October 2, 1965, appellant and appellee were married. On March 31, 1980, the Circuit Court of Fairfax County, Virginia granted to the appellee a divorce *a vinculo matrimonii.* Appellant did not appear in that divorce action. In May 1980, appellee filed in the Circuit Court for Montgomery County a Bill of Complaint for Partition or Sale in Lieu of Partition of Real Property. In June 1980, the appellant filed an Answer to the Bill of Complaint along with a Cross-Bill of Complaint in which she prayed that she be awarded alimony, both *pendente lite* and permanent, counsel fees, court costs, and expenses of the litigation. In addition to her general prayer for relief, she prayed that the court (a) determine the value of the parties' "marital property"; (b) grant a decree stating her ownership interest in the personal and real property of the parties regardless of how titled, and order a partition or sale in lieu of partition of any jointly owned property; (c) make a monetary award to her after adjusting the parties' rights in the marital property; (d) reduce the monetary award to a judgment in her favor; and (e) grant a prayer for general relief.

On January 7, 1981, the circuit court, following the recommendation of a domestic relations master, ordered the appellee to pay to the appellant monthly alimony of $500.00 and $500.00 as an initial counsel fee. On August 5, 1981, the court *sua sponte* referred all of the other issues to the domestic relations master for trial. After setting out his findings of fact, the master made the following recommendations:

"1. That the appellee pay to the appellant for her support and maintenance $700.00 per month during the joint lives of the parties or until the remarriage of the defendant, in advance commencing and accounting fifteen days after the defendant vacates the use and possession of premises 1619 Woodwell Road, Silver Spring, Maryland, subject to the further order of Court.

2. That the defendant shall vacate the use and possession of premises of 1619 Woodwell Road, Silver Spring, Maryland, upon the effective date of this order.

3. That the jointly owned real property located at 1619 Woodwell Road, Silver Spring, be sold in lieu of partition, and the net proceeds be equally divided between the parties, subject to the further order of Court.

4. That the appellant be awarded an adjusted monetary judgment against the appellee in the sum of $2,000.00, exclusive of the monetary award to the defendant payable in the future from the federal civil service retirement pension benefit payable to the appellee.

5. That the appellant be awarded an adjusted monetary award of a one-third portion of the appellee's future federal civil service pension benefits.

6. That the appellee pay to the appellant's attorney fees in the sum of $5,800.00, and that appellant pay the costs of these proceedings."

On August 31, 1982, the court heard oral argument on appellee's exceptions to the master's report. No testimony was taken. On October 29, 1982, the court issued the order appealed from which (1) reduced the monthly alimony from $700.00 to $500.00; (2) awarded the appellant "an adjusted monetary judgment against" the appellee in the amount of $2,000.00 and (3) reduced the attorney's fee to be paid by appellee to appellant's attorney from $5,800.00 to $2,000.00.

I.

*A Monetary Award Without a Determination of the Value of the Marital Property*

Md.Ann.Code, Courts and Judicial Proceedings Article, Section 3–6A–02, provides:

"A Maryland court may exercise the powers conferred by this subtitle after a divorce or annulment has been granted by a court of a foreign jurisdiction, if one of the parties was domiciled in this State when the foreign proceedings were commenced, and the foreign court

lacked or did not exercise personal jurisdiction over the party domiciled in this State. or jurisdiction over the property at issue."

Section 3–6A–05(b) provides:

"The court shall determine the value of all marital property. *After making the determination,* the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property. . . ."

The Court of Appeals and this Court have held that this language means exactly what it states. *Deering v. Deering,* 292 Md. 115, 121, 437 A.2d 883 (1981); *Grant v. Zich,* 53 Md.App. 610, 614–15, 456 A.2d 75 (1983), *cert. granted,* 296 Md. 110 (1983); *Ayars v. Ayars,* 50 Md.App. 93, 97, 436 A.2d 490 (1981).

■ The Master found that ten-thirteenths (10–13th) of appellee's Federal Civil Service Pension is marital property. *Ohm v. Ohm,* 49 Md.App. 392, 431 A.2d 1371 (1981); *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981). Although appellee argues that the pension was evaluated and allocated in accordance with *Grant* and *Deering, supra,* nowhere in the record does it appear that the pension was *evaluated.* There is no doubt that the Master set out the formula upon which distribution of the parties' interests in the pension were to be determined; however, the *value* of the pension was never either judicially determined or considered before the monetary award of $2,000.00. We hold that this was reversible error. *Deering, Grant* and *Ayars,* all *supra.*

## II.

### *An Alimony Pendente Lite Award after a Foreign Divorce A Vinculo Matrimonii*

After conducting a hearing, the Domestic Relations Master recommended that Mr. Komorous pay his former spouse $500.00 initial counsel fees and $500.00 per month alimony *pendente lite.* Mr. Komorous filed exceptions to the Mas-

ter's report, arguing that the circuit court was not empowered to award alimony *pendente lite* where the parties were divorced prior to the prayer for alimony. On January 9, 1981, the court ordered the exceptions stricken on the basis that they were filed too late, and awarded the *pendente lite* alimony recommended by the Master.

On cross-appeal, Mr. Komorous contends that alimony *pendente lite* exists solely to enable a needy spouse to carry on a suit for divorce, and that since the parties were already divorced when Mrs. Komorous filed her cross-bill, the chancellor lacked jurisdiction to grant such an award. Restated, the question is whether, following dissolution of a marriage by a foreign *ex parte* divorce decree, the Maryland domiciliary spouse, over whom the foreign court lacked personal jurisdiction, may obtain temporary alimony from a Maryland court pending adjudication of her suit for permanent alimony.

■ Under the Supreme Court's interpretation of the Full Faith and Credit Clause of the federal constitution, Maryland is obliged to recognize a valid *ex parte* foreign divorce, *Williams v. North Carolina,* 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942), but may nonetheless protect the domiciliary's interests by granting her alimony or support. *Estin v. Estin,* 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948); *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957). Maryland case law has followed a policy trend toward exercising its power to protect the domiciliary spouse. The policies declared by the Court of Appeals justify our extending this trend to protect the right to alimony *pendente lite* following an *ex parte* foreign decree.

The evolution of the law in this area has been elaborated elsewhere and need only be summarized here. *See generally* Note, "Divisible Divorce in Maryland—Does it Exist?" 30 Md.L.Rev. 63 (1970); *Colburn v. Colburn,* 20 Md.App. 346, 316 A.2d 283 (1974); *Altman v. Altman,* 36 Md.App. 538, 373 A.2d 1296 (1977) *aff'd.* 282 Md. 483, 386 A.2d 766 (1978).

Since the colonial era, Maryland courts have exercised the inherent authority to grant alimony. *Thomas v. Thomas,* 294 Md. 605, 613–14, 451 A.2d 1215 (1982); *Blumenthal v. Blumenthal,* 258 Md. 534, 539, 266 A.2d 337 (1970). In 1777, the Legislature confirmed this power with a provision, later recodified into Cts. & Jud.Proc., section 3–603(a), which reads: "The Court shall hear and determine a case of alimony in as full and ample manner as such case could be heard and determined by the Ecclesiastical Courts of England." Acts of February 1777, ch. 12, § 14; *Colburn v. Colburn,* 20 Md.App. 346, 355, 316 A.2d 283 (1974).

The ecclesiastical courts, however, could only grant an *a mensa* divorce, which permitted separation, but did not dissolve the marriage. Alimony was consequently regarded as enforcement of the husband's duty to support his wife while the marriage subsisted. *Clayton v. Clayton,* 231 Md. 74, 76, 188 A.2d 550 (1963); *Minner v. Minner,* 19 Md.App. 154, 155, 156 n. 3, 310 A.2d 208 (1973) (citing 1 Blackstone's Commentaries on the Law, ch. 15, at 189 (Gavit ed.)).

In 1841, the Legislature authorized courts of chancery to grant divorces *a vinculo matrimonii* and award alimony therein. Acts of 1841, Ch. 262, *codified as* Art. 16, §§ 24, 25 (1981 repl. vol.). *Thomas v. Thomas,* 294 Md. 605, 611, 451 A.2d 1215 (1982); *Wallace v. Wallace,* 290 Md. 265, 272, 429 A.2d 232 (1981). Interpreting the statute, the Court of Appeals said that the Legislature intended to authorize absolute divorce, but "intended to provide alimony of the same character and limitation as the alimony the Courts had so long dealt with." *Emerson v. Emerson,* 120 Md. 584, 590–91, 87 A. 1033 (1913), *quoted in Altman v. Altman, supra,* 282 Md. at 491–92, 386 A.2d 766 (1978). Insofar as alimony historically could only be granted during the marital relationship, the right to claim this relief was obviated upon dissolution of the marriage by an *a vinculo* decree. *Wallace v. Wallace, supra,* 290 Md. at 271, 429 A.2d 232; *Colburn v. Colburn,* 20 Md.App. 346, 355, 316 A.2d 283 (1974).

■ As Judge Levine observed in *Altman:*

"However valid this conception of the nature of alimony may have been at the time of the Ecclesiastical Courts, its strict application in the age of the ex parte migratory divorce is open to serious doubt. Under the Supreme Court's exposition of the Full Faith and Credit Clause of the Federal Constitution, a state is bound to give full recognition to an ex parte divorce decreed in another state having jurisdiction over the complainant. *Williams v. North Carolina (I),* 317 U.S. 287, 299, 63 S.Ct. 207 [213], 87 L.Ed. 279 (1942). In those states, like Maryland, which treat alimony as an inseparable incident of marriage, a constitutionally binding dissolution of the marital status by a foreign court, even when effected in an ex parte proceeding, will necessarily result in the extinction of the wife's right to alimony as a matter of state law, *Brewster v. Brewster,* 204 Md. [501] at 506 [105 A.2d 232]; *Stambaugh v. Stambaugh,* 458 Pa. 147, 329 A.2d 483, 488–89 (1974); *Loeb v. Loeb,* 118 Vt. 472, 114 A.2d 518, 526 (1955); *see Grant v. Grant* [136] Vt. [9], 383 A.2d 627, 630 (1978), even though the Constitution does not obligate a state to give effect to that portion of a foreign ex parte judgment which purports to cut off a nonresident spouse's right to alimony or support, *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418–19, 77 S.Ct. 1360 [1362], 1 L.Ed.2d 1456 (1957); *Estin v. Estin,* 334 U.S. 541, 548–49, 68 S.Ct. 1213 [1218], 92 L.Ed. 1561 (1948)."

*Altman v. Altman, supra,* 282 Md. at 492, 386 A.2d 766.

Justice Douglas for the Supreme Court stated in *Estin v. Estin:*

"Petitioner's argument . . . is that the tail must go with the hide—that since by the Nevada decree, recognized in New York, he and respondent are no longer husband and wife, no legal incidence of the marriage remains.

&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;&ast;

But the fact that marital capacity was changed does not mean that every other legal incidence of the marriage was

necessarily affected." 334 U.S. at 544, 545, 68 S.Ct. at 1216, 1216.

"The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern." 334 U.S. at 549, 68 S.Ct. at 1218.

Following the Supreme Court's decision, a majority of the jurisdictions that passed on the issue permitted the domiciliary spouse to claim alimony after the foreign *ex parte* divorce. *Altman v. Altman, supra,* 282 Md. at 493, 386 A.2d 766; H. Clark, *Law of Domestic Relations,* § 14.4 at 437 (1968); Note, 30 Md.L.Rev. 63, 65 (1970). *See* Annot., 28 A.L.R.2d, § 7, *et seq.,* and later case service. Maryland was one of the minority of states that prohibited the "divisible divorce." *Johnson v. Johnson,* 202 Md. 547, 97 A.2d 330 (1953); *Brewster v. Brewster,* 204 Md. 501, 105 A.2d 232 (1954); *Upham v. Upham,* 238 Md. 261, 208 A.2d 611 (1965); W. Nelson, *Divorce and Annulment,* §§ 33–40 at 511 (2d ed. 1945). In *Johnson v. Johnson,* however, Judge Hammond's concurring opinion strongly criticized this prohibition for its failure to protect the interests of the spouse who continued to live in Maryland:

"In these days of Nevada, Florida, Arkansas, and other prolific divorce States, this puts a separated wife in a real predicament. She is on the horns of a dilemma, having the alternative of submitting to the jurisdiction of a foreign Court, where as an out-of-state defendant, she is under a disadvantage in seeking alimony, or of ignoring the foreign divorce proceeding and losing the alimony granted by her home Court entirely. Under the mores and practices of the times, it is hardly fair for Maryland to put its lady citizens in this predicament because of a narrow artificial and unrealistic concept and judicial interpretation of alimony." 202 Md. at 558, 97 A.2d 330.

*Accord Altman v. Altman, supra,* 282 Md. at 492–93, 386 A.2d 766 ("Putting any spouse to such a choice is palpably unconscionable.")

Judge Hammond's concurring opinion in *Johnson* prevailed in *Dackman v. Dackman,* 252 Md. 331, 250 A.2d 60 (1969). In that case, the wife filed a bill in Maryland asking for permanent alimony, among other relief, from her husband, who had moved to Nevada. Process was personally served upon the husband, who, in turn, initiated divorce proceedings in Nevada and had process personally served on the wife; she chose not to appear in the Nevada litigation. After obtaining a Nevada divorce decree, the husband filed a motion to dismiss the wife's Maryland action. The chancellor denied the motion, and the husband appealed. Chief Judge Hammond held that the chancellor's action was not appealable, but went on to state for a unanimous Court:

"[W]e now take the view that the rule of the *Johnson* cases restating the earlier cases should be reexamined and relaxed, since in *Clayton v. [Clayton,* 231 Md. 74 [188 A.2d 550] (1963) ] we did change the established concept of alimony in cases of absolute divorce by reading 'alimony' in § 3 of Art. 16 of the Code as commensurate with 'support' and allowable where there never was the legal relation of husband and wife and thereby changed the concept of statutory alimony which underlay the rule of the *Johnson* cases and the earlier cases on which they relied.

The wife here has not sought a divorce and, as long as the Nevada decree stands unimpeached, could not obtain one as such in Maryland. But a court of equity has inherent power, independent of its authority to grant a divorce, to entertain and grant an application by a wife against her husband for alimony where he is at fault.

\*     \*     \*     \*     \*     \*

It would seem particularly appropriate for a Maryland equity court to exercise that inherent power in a case in which the marital domicile was in Maryland for many years, the deserted wife continues to reside here, the

adultery which is the fault which justifies support and maintenance—assuming it is proven that it occurred—took place in Maryland, there is ample property in Maryland to furnish the support, and the foreign divorce was granted without the wife being personally before the court. Under these circumstances, and we at this time limit our decision and holding to the particular facts of the case before us, we would affirm a suitable decree granting the wife support payable only from the property of her husband in Maryland if the wife cannot or does not choose to impeach the Nevada decree and the trial judge finds it factually appropriate to grant such a decree." Id. 252 Md. at 344–45, 346–47, 250 A.2d 60.

Although *Dackman* purported to limit itself to the facts of that case, its broader significance was explained in *Altman v. Altman, supra,* 282 Md. 483, 386 A.2d 766 (1978), wherein the Court stated:

"Recognizing the great injustice wrought by the ancient doctrine and noting the failure of the Legislature to take corrective action, this Court in *Dackman* elected to depart from the traditional rule and to permit a claimant to recover alimony in those cases where her spouse had previously obtained an ex parte divorce in a foreign tribunal lacking personal jurisdiction to adjudicate the claimant's right to alimony payments. The same policy considerations which prompted our holding in *Dackman* apply with equal force to the present matter. Here, as in *Dackman,* the husband has sought to avoid responsibility for the support of his former wife by securing an ex parte divorce decree from a Nevada court which never acquired personal jurisdiction over the nonresident wife. Although the otherwise valid Nevada decree must be given effect insofar as it affects the marital status of the parties, there is absolutely no justification for permitting such a decree to endanger appellee's material well-being by terminating her support rights without any consideration having been given to the scope of her needs.

Maryland's predominant interest in safeguarding the economic security of its domiciliaries who suffer loss of financial support at the hands of an itinerant spouse, requires that aggrieved residents be afforded a remedy even where the marriage has previously been brought to an end by an out-of-state decree." *Id.* at 493, 386 A.2d 766.

*Wallace v. Wallace,* 290 Md. 265, 271–72, 429 A.2d 232 (1981) elaborated on the trend in policy declared in *Altman:*

"As a matter of public policy, in that case we refused to further require this State, the jurisdiction retaining the paramount interest in the welfare of the domiciliary alimony claimant, to abdicate its superior interest in the support award simply because the marital tie had previously been severed by a valid divorce rendered by a foreign court lacking personal jurisdiction over the claimant."

██ The same policy considerations, declared by the Court of Appeals, that account for the trend toward recognition of the divisible divorce apply with equal or greater strength to a domiciliary spouse's claim for temporary alimony pending adjudication of her claim for permanent alimony. An award of alimony *pendente lite* is based purely on need, *Dougherty v. Dougherty,* 189 Md. 316, 320, 55 A.2d 787 (1947), and a spouse may be just as needful of support pending an award of permanent alimony as pending a divorce decree. A foreign decree of divorce may end the marital relationship, but does not end Maryland's paramount interest in the domiciliary spouse's economic well-being. It would be anomalous to permit a claim for permanent alimony, but not temporary alimony, which sustains the suit and suitor pending a final award. We place the needy claimant awaiting an award of permanent alimony in the same position as one awaiting a divorce decree; therefore, we hold that the domiciliary spouse may obtain temporary alimony pending permanent alimony litigation following a foreign *ex parte* divorce decree.

In summary, we affirm the award of alimony *pendente lite* and remand the case to the circuit court for the purpose of determining the value of the marital property and deciding whether and to what extent a monetary award should be granted.

JUDGMENT AFFIRMED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID BY THE APPELLEE/CROSS–APPELLANT.